EL PUEBLO DE PUERTO RICO, apelado, *v.* EVELYN ORTIZ PÉREZ, acusada y apelante.

*Número:* CR-86-9      *Resuelto:* 23 de enero de 1989

*Alberto E. Lugo Janer*, de la *Clínica de Asistencia Legal de la Escuela de Derecho de la Universidad de Puerto Rico*, abogado de la apelante; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General*, y *Blanca Díaz Segarra, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

El Ministerio Público presentó acusación contra Evelyn Ortiz Pérez, a quien se le imputó tres (3) cargos por infracción al Art. 173 del Código Penal, 33 L.P.R.A. sec. 4279 (robo). Cuando se celebró el juicio por jurado, la acusada fue declarada culpable en todas las instancias. No conforme con la sentencia dictada, entabló el presente recurso de apela-

ción en el que señala cinco (5) errores susceptibles de agrupación. El primero y el quinto versan sobre el trámite de identificación; los tres (3) restantes aluden a la negativa del tribunal de instancia de permitir la presentación al Jurado de cierta prueba de defensa. Por las razones que pasamos a exponer, procede confirmar *in toto* la sentencia apelada.

## I

Según surge de la prueba que desfiló, la esfera de hechos adjudicados en instancia revela que allá para diciembre de 1984, a eso de las 4:00 P.M., la acusada visitó un laboratorio clínico situado en el área de Carolina. Allí se encontraban Helen Labrador, Carmen Iris Reyes Labrador —hija de doña Helen— Nayda Rivera Maíz, tecnóloga médico, y el hijo de Carmen Iris —un menor de once (11) años— al momento de los hechos.

Doña Helen atendió a la acusada y le informó sobre el costo de unos análisis. Acto seguido, la acusada abandonó el local al mismo tiempo que doña Helen tuvo que ir a la parte posterior del establecimiento a buscar un bolígrafo.

En el "cuarto de pruebas" hablaban Nayda y Carmen Iris. El menor pidió permiso a su madre "para ir a la farmacia". Apéndice, pág. 25. Carmen Iris dio su aprobación, pero le indicó que tuviera cuidado al cruzar la calle. No bien hubo salido el niño del local, regresó acompañado de un hombre robusto y armado quien lo sujetaba y encañonaba por "la sien, en la nuca". Apéndice, pág. 7.

Ante el asombro de los allí presentes, el individuo reunió a todo el personal en el "cuarto de pruebas" del laboratorio, exigió el dinero en efectivo y los despojó de prendas y carteras. Luego pidió una bolsa para echar el botín.

En este momento se asomó por la puerta una mujer descrita por Carmen Iris Reyes como "bajita, delgada, blanca . . . de pelo rubio". Apéndice, pág. 30. Resultó ser la persona que anteriormente había inquirido por el costo de los análi-

sis. El asaltante se dirigió a la mujer y le indicó que se quedara en la sala de espera para "ver si [venía] alguien". Íd. pág. 31. Completada su faena, el individuo abandonó el establecimiento en unión a la mujer que lo aguardaba.

Este incidente crucial en instancia —del cual tenemos la transcripción parcial— fue descrito por la testigo Carmen. Iris Reyes de la forma siguiente:

Testigo: Pues, entonces yo corrí hacia la puerta de escape que se ve hacia afuera, pero hacia dentro no se ve.
Fiscal: Y usted qué vio.
Testigo: El muchacho que tenía a mi hijo y ella, entonces not[o] cuando cruzan la calle, frente al laboratorio hay una oficina de médico y allí tenían parqueado un carro.
Fiscal: ¿Qué marca de carro?
Testigo: Un Toyota.
Fiscal: Se acuerda del color.
Testigo: Uno azul.
Fiscal: Su tablilla se acuerda.
Testigo: Diecinueve "c" ciento setenta y cinco.
Fiscal: ¿Por qué usted sabe el número de tablilla?
Testigo: Porque yo llegué hasta el carro.
Fiscal: ¿Qué usted notó, si algo, notó con referencia al carro?
Testigo: Pues, en ese momento cuando él se dio cuenta que yo voy detrás de ellos, él se monta al carro . . . y la persona que estaba con él . . .
Fiscal: ¿Quién era la persona que estaba con él?
Testigo: Ella . . .
Fiscal: ¿En qué posición quedaba el carro?
Testigo: El carro quedaba de frente al lado de mí, a mano derecha mía, entonces la muchacha quería entrar y la puerta no quería abrir para entrar.
Fiscal: ¿Y qué pasó allí?
Testigo: *Pues, estuvo un rato tratando de abrir la puerta* y en ese momento yo fui a agarrar al muchacho porque tenía coraje y ahí mi mamá me llamó. Entonces el muchacho prende el carro y puede escapar. (Énfasis suplido.) Apéndice, págs. 31–32.

En el contrainterrogatorio, Carmen Iris declaró que vio a la acusada de cuerpo entero, que llevaba una bata y unos

zapatos de taco. De nuevo describió a la asaltante como delgada, bajita, de pelo rubio y blanca.

De vuelta al laboratorio, las víctimas avisaron a la Policía. A los pocos minutos llegó un auto patrulla, se tomó la información de rigor y se practicó una búsqueda por las cercanías; ésta fue infructuosa. Ese mismo día se presentó la querella.

Días después se personó al laboratorio un agente de la Policía con varias fotos. Carmen Iris identificó al asaltante. Un mes después se presentó nuevamente el agente, ahora con fotos de mujeres. No fue posible identificar a alguien. En estos momentos se recibió una llamada del Cuartel General; había una sospechosa que respondía a la descripción de la acusada. El agente solicitó a Carmen Iris que lo acompañara. El proceso culminó con la identificación mediante rueda de detenidos de Evelyn Ortiz Pérez como la mujer que, en unión a otro individuo, asaltó el laboratorio clínico. Cuando se presentó la correspondiente acusación, Evelyn Ortiz Pérez fue convicta y sentenciada a veinte (20) años concurrentes por tres (3) violaciones al Art. 173 del Código Penal, *supra*. No conforme, instó la apelación que nos ocupa.

## II

A través de una ilustrada comparecencia de la Clínica de Asistencia Legal de la Facultad de Derecho de la Universidad de Puerto Rico, la apelante cuestiona la confiabilidad de la identificación en el primero y quinto error.[1] Según la ape-

---

[1] Leen específicamente estos señalamientos:
"PRIMERO: Si para hacer admisible ante el Honorable Tribunal Sentenciador la identificación que de la acusada se hizo en la rueda de detenidos, era necesaria la toma y presentación por el Estado de una fotografía de la rueda de detenidos tal y como la rueda le fue presentada a los testigos, Regla 252.1 (f) de Procedimiento Criminal en su ultimo párrafo; Reglas 10(G) y 16.5 de Evidencia.

lante, el procedimiento estuvo viciado fatalmente, ya que no se tomó una foto de la rueda de detenidos de forma absolutamente simultánea con su celebración, circunstancia que produce —a su entender— una violación a su derecho al debido proceso de ley, a la igual protección de las leyes y a tener un juicio justo e imparcial.

Sin embargo, se desprende de la exposición narrativa de la prueba que en la rueda de detenidos la testigo Carmen Iris Reyes identificó sin titubeo a la acusada, e inmediatamente después de la celebración de la rueda, ese mismo día, los agentes tomaron dos (2) fotografías en otro cuarto de la misma dependencia. La fotografía reproduce de forma adecuada las integrantes de la rueda *tal y como fueron presentadas a la testigo*, con el mismo número de identificación y orden en que estaban ubicadas. La apelante no contradice la regularidad de estos datos.

■ La Regla 252.1(f) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone:

*(f) Récord de los procedimientos.* En todo procedimiento efectuado de acuerdo a estas reglas se levantará una breve acta la cual será preparada por el encargado de la rueda.

En dicha acta se incluirá el nombre de los integrantes de la rueda, nombres de otras personas presentes y un resumen sucinto de los procedimientos observados.

Deberá además tomarse cuantas veces fuere necesario para su claridad una fotografía de la rueda tal y como le fue presentada a los testigos. Dicha foto, al igual que el acta levantada, formará parte del expediente policíaco o fiscal correspondiente y su obtención por un acusado se regirá por las reglas de procedimiento criminal vigentes.

---

"QUINTO: Si erró el Honorable Tribunal Sentenciador al no suprimir la identificación que de la acusada hiciera Carmen Iris Reyes Labrador habida cuenta de que de la totalidad de las circunstancias en que se da dicha identificación surge que la misma no fue confiable." Alegato de la apelante, págs. 11–12.

■ La frase "tal y como le fue presentada a los testigos" denota el propósito de dejar constancia fotográfica, entre otros extremos, del número de componentes de la rueda, su apariencia física en lo tocante a sexo, color, estatura, peso y vestimenta hasta donde sea posible, etc. Regla 252.1(d) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. En otras palabras, lo que la norma persigue es que queden plasmadas las condiciones de la composición de la rueda, elemento adicional a considerarse a la hora de estimar la confiabilidad de la identificación. La Regla 252.1 de Procedimiento Criminal, *supra*, no hace imperativo, sin embargo, que la foto sea tomada —con puntualidad de cronómetro— en el mismo instante en que se produce la identificación.

■ En el caso de autos se cumplió cabalmente con los requisitos estatutarios y las salvaguardas contra la sugestividad en el proceso de identificación mediante ruedas de detenidos. Pero aún más. La posición de este Tribunal en casos donde *sí* hubo un desvío de las disposiciones de la Regla 252.1 de Procedimiento Criminal, *supra*, es marcadamente contraria a la contención de la apelante. De por sí, no toda anormalidad cometida en el proceso de identificación de un acusado mediante rueda de detenidos acarrea la supresión de la evidencia de identificación o la revocación de una sentencia de convicción. Véanse: *Pueblo v. Rivera Navarro*, 113 D.P.R. 642 (1982); *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817 (1983).

■ Es preceptivo que la validez de la identificación de un sospechoso o un acusado —no importa el procedimiento empleado— debe adjudicarse a la luz de las circunstancias particulares de cada caso. En apelación, la conclusión del juzgador de hechos sobre la suficiencia de prueba confiable para la identificación de un acusado tiene todo el respeto y validez que ordinariamente se extiende a las determina-

ciones de hecho. La admisión de prueba de identificación, aunque ésta contenga elementos de sugestividad, no viola el debido proceso de ley si están presentes suficientes elementos de confiabilidad, tomando en consideración la totalidad de las circunstancias, a la luz de los factores siguientes: (1) la oportunidad que tuvo el testigo de observar al ofensor al tiempo en que se cometía el crimen; (2) el grado de atención del testigo; (3) la corrección de la descripción previa del criminal hecha por el testigo; (4) el nivel de certeza demostrado por el testigo en la confrontación, y (5) el tiempo transcurrido entre el crimen y la confrontación. *Pueblo v. Márquez y Bermúdez*, 122 D.P.R. 93 (1988); *Pueblo v. Mattei Torres*, 121 D.P.R. 600 (1988); *Pueblo v. Rodríguez Maysonet*, 119 D.P.R. 302 (1987); *Pueblo v. Rey Marrero*, 109 D.P.R. 739 (1980); *Pueblo v. Peterson Pietersz*, 107 D.P.R. 172 (1978).

Para desacreditar el campo de atención de la testigo Carmen Iris Reyes, la defensa argumenta en torno a la exaltación y miedo que ésta debe haber sufrido durante los momentos críticos del asalto. En efecto, no nos es difícil convenir con la apelante en que es posible que la testigo se hallara presa de un fuerte sobresalto al ver a su hijo de once (11) años encañonado por un sujeto en las condiciones descritas. La prueba desfilada y creída demuestra, no obstante, que aun en estas circunstancias la identificación del acusado fue precisa, confiable y digna de crédito.

## A. *La oportunidad que tuvo la testigo de ver al ofensor*

La testigo Carmen Iris Reyes testificó que cuando el asaltante pidió una bolsa para echar el dinero "not[ó] que una persona va entrando hacia el área en donde nosotros estamos". Apéndice, pág. 30. A preguntas del abogado de la defensa dijo que vio a la mujer "de cuerpo entero" (íd., pág. 37) y que tuvo el tiempo suficiente para decirle "'no se preocupe es un asalto', y mirarle la cara". Íd., pág. 39. Pudo

ver a la acusada a una distancia de "[d]os o tres pasos". Íd., pág. 60. Luego vuelve a ver a la mujer "[c]uando iban hacia el carro" y "observ[ó] que ella trat[ó] de abrir la puerta". Íd., pág. 40. En esta segunda ocasión pudo observar a los asaltantes por más tiempo, ya que el acompañante de la acusada intentó por tres (3) o cuatro (4) ocasiones "prender" (íd., pág. 40) el carro y ella "estuvo un rato tratando de abrir la puerta . . .". Íd., pág. 32.

Atestiguó Carmen Iris Reyes que el carro quedaba de frente, a su lado derecho, y que continuó observando hasta que los asaltantes se fueron. Apéndice, pág. 41. Mientras ocurrían los hechos, "[e]staba tranquila . . . tan tranquila como se está cuando están asaltando a uno . . .". Aclaró que "trataba de controlar[s]e". Íd., pág. 53.

B. *El grado de atención de la testigo y corrección de la descripción previa*

Basta decir que en la segunda ocasión, cuando la acusada fue vista por la testigo, ésta última tuvo tiempo suficiente para observar, además, el carro, darle el número de tablilla a la Policía y ofrecer una descripción pormenorizada del mismo. Apéndice, pág. 32. Describió el físico, vestimenta y hasta el detalle del calzado de la apelante. Íd., pág. 38.

C. *El nivel de certeza en la confrontación*

Cuando la testigo Carmen Iris Reyes se confronta con la rueda de detenidos, observa pausadamente. Se tomó su tiempo, porque "quería estar segura de lo que iba a decir". Apéndice, pág. 51. Lo cierto es que no tuvo dificultad en señalar a la apelante.

D. *Tiempo transcurrido entre el crimen y la confrontación*

Los hechos delictivos ocurrieron el 18 de diciembre de 1984 y la confrontación en la línea de detenidos se efectuó el

21 de enero de 1985, o sea, a treinta y cuatro (34) días del incidente. En las circunstancias presentes, no es posible concluir que el factor tiempo militó en contra de una identificación confiable.

■ Ciertamente es una tarea angustiosa extraer la verdad en un juicio criminal. Somos igualmente conscientes de que los errores en la identificación de un acusado pueden ocasionar graves extravíos en la administración de la justicia. Según las circunstancias del presente caso, no obstante, el procedimiento de identificación cumplió ampliamente con las exigencias del debido proceso de ley. Nada justifica que intervengamos con la determinación del tribunal de instancia al negarse a excluir la prueba de identificación de la acusada.

## III

Los señalamientos dos (2) y tres (3) giran en torno al mismo eje.[2] Su interpretación adecuada exige una comprensión de la verdadera naturaleza de la prueba que se ofreció y que no se admitió en este caso.

De entrada, resulta imprescindible señalar que la teoría de defensa en modo alguno descansó en la noción de que la testigo Ana Mercedes Vázquez participó en los incidentes

---

[2] "SEGUNDO: Si es un error del Honorable Tribunal Sentenciador que amerita la revocación de la sentencia el que el Honorable Tribunal Sentenciador no haya permitido presentar al jurado una testigo de defensa (Ana Mercedes Vázquez) cuando el testimonio y la presencia de ésta constituía prueba pertinente que de presentarse al jurado pudo haber llevado a la exoneración de la acusada; máxime cuando no hubo objeción del fiscal a tal presentación.

"TERCERO: Si es un error del Honorable Tribunal Sentenciador que amerita la revocación de la sentencia el que el Honorable Tribunal Sentenciador no haya permitido presentar ante los testigos de cargo a una testigo de defensa (Ana Mercedes Vázquez) cuando el testimonio y la presencia de ésta constituía prueba pertinente que de presentarse pudo haber llevado a la exoneración de la acusada; máxime cuando no hubo objeción del fiscal a tal presentación." Alegato de la apelante, pág. 11.

que dan fundamento a la acusación contra Evelyn Ortiz Pérez.[3]

La defensa pretendía que se *exhibiera* a esta persona frente al Jurado y a la testigo de cargo que identificó a la apelante con el propósito de *impugnar* la prueba de identificación del Pueblo. Se intentaba *ilustrar* que la prueba del Estado era débil, mediante la presentación de una persona *con características físicas similares a las de la acusada,* para que el juzgador de hechos infiriera que probablemente la apelante no fue la responsable del delito imputado.

■ El tribunal de instancia se amparó en la Regla 19 de Evidencia, 32 L.P.R.A. Ap. IV, y no encontró suficiente valor probatorio a este ofrecimiento de la defensa cuando atendió los factores a los que se refiere dicha regla, que dispone:

*Regla 19. Evidencia pertinente excluida*

Evidencia *pertinente* puede ser excluida cuando su *valor probatorio* es de poca significación en relación a cualesquiera de estos factores:

(a) Peligro de causar perjuicio indebido
(b) probabilidad de confusión
(c) desorientación del jurado
(d) dilación de los procedimientos
(e) innecesaria presentación de prueba acumulativa. (Énfasis suplido.)

■ La Regla 19 de Evidencia, *supra*, opera para excluir prueba que resulta de alguna forma pertinente ("[e]videncia pertinente puede ser excluida"). Si la evidencia no

---

(3) Así se desprende del propio testimonio de Ana Mercedes Vázquez que se llevó al récord como evidencia ofrecida y no admitida:

"Fiscal: Por eso y como no es mi testigo yo le pregunto, señora, mire, el 18 de diciembre al 26 de diciembre que usted estuvo en su casa, como le dice al tribunal; yo le pregunto si usted estuvo en el Laboratorio Clínico Doctor Center propiedad del Sr. Wilfredo Reyes Labrador.

"Testigo: No.

"Fiscal: ¡No!" Apéndice, pág. 81.

fuera pertinente —primera condición a la admisibilidad— de acuerdo con la definición que ofrece la Regla 18 de Evidencia, 32 L.P.R.A. Ap. IV, obviamente ésta sería inadmisible cause o no perjuicio.

■ En el lenguaje forense, los conceptos de "valor probatorio" y "pertinencia" se han utilizado indistintamente. Sin embargo, hay una diferencia. "Evidencia pertinente" es aquella tendente a hacer la existencia de un hecho más probable de lo que sería sin tal evidencia (Regla 18(b) de Evidencia, 32 L.P.R.A. Ap. IV); valor probatorio, por otra parte, mide la intensidad y fuerza de esa tendencia. 22 *Wright and Graham, Federal Practice and Procedure* -Sec. 5214 (1978). Se trata, pues, de un concepto relativo.

■ No cabe duda de que el factor "perjuicio indebido" es el más invocado de la Regla 19 de Evidencia, *supra*. Por supuesto, toda prueba es "perjudicial" en la medida que favorece a una parte y perjudica a otra, pero este no es el tipo de perjuicio al que se refiere la regla. En términos generales, se trata de prueba que puede conducir a un resultado erróneo cuando se apela meramente —y aunque no únicamente— a los sentimientos y a la emoción. Véanse: 2 *Louisell and Mueller, Federal Evidence* Sec. 124 *et seq.* (1985); *Borden, Inc. v. Florida East Coast Ry. Co.*, 772 F.2d 750, 756 (11mo Cir. 1985); *United States v. Betancourt*, 734 F.2d 750, 757 (11mo Cir. 1984). Hay que recordar, sin embargo, que particularmente en la litigación criminal en ocasiones es preciso recrear ante los ojos del Jurado situaciones desagradables que deben ser legítimamente objeto de prueba. No toda evidencia que pueda conmover el ánimo del Jurado constituye materia a ser excluida. 1 *Weinstein's Evidence* Sec. 403[05] (1985). Nuevamente, el concepto es relativo.

■ Los factores restantes ("probabilidad de confusión", "desorientación del jurado", "dilación de los procedi-

mientos" e "innecesaria presentación de prueba acumulativa") tienden a converger. La prueba que confunde igualmente desorienta al Jurado, así como ocasiona dilación en los procedimientos. La confusión y la desorientación se refieren al peligro a que el Jurado infiera un hecho que no se derive lógicamente de la prueba. Véase V.J. Gold, *Federal Rule of Evidence 403: Observations on the Nature of Unfairly Prejudicial Evidence*, 58 (Núm. 2) Wash. L. Rev. 497 (1983). Los factores de dilación e innecesaria presentación de prueba acumulativa atienden primordialmente a consideraciones de eficiencia en la administración de la justicia. A menudo, el valor probatorio de una evidencia no justifica el tiempo que consumirá su presentación.

En fin, como recientemente se ha señalado:

[L]a Regla 19 cumple una función clave dentro del actual sistema probatorio. Los comentaristas se han referido a ella con calificativos tales como "the cornerstone" y "keystone of the arch". Ver respectivamente, Peterfreund, *Relevance and its Limits* . . .[,] 25 Rec. A.B. City N.Y. 80, 83 (1970); Morgan, *The Code of Evidence Proposed by the American Law Institute*, 27 A.B.A.J. 539, 542 (1941). La justificación de su existencia es clara: unas reglas de evidencia orientadas a la admisibilidad, que eliminan gran parte de las antiguas reglas de exclusión y que endosan una definición tan liberal de pertinencia necesitan un mecanismo que permita al juez tener un control de la evidencia que es técnicamente admisible. *Primer examen de las Reglas de Evidencia de 1979: comentarios y recomendaciones*, San Juan, Secretariado de la Conferencia Judicial, 1986, págs. 79–80.

A la luz de estos principios, no erró el foro de instancia. No estamos en el caso del testigo que depone dudosa o vagamente ante el tribunal en torno a las características físicas de la acusada. El alegato del Procurador General expresa con claridad la situación:

De prevalecer la teoría de la apelante, cualquier acusado, en este tipo de caso, podría traer a una, cinco, veinte o cualquier

número de personas con características físicas parecidas a las del acusado, como prueba de impugnación de la suficiencia de la prueba de identificación del Pueblo. Se abriría el juicio a materia "colateral" para contradecir o refutar evidencia presentada anteriormente, lo que representa un caso clásico de exclusión bajo la Regla 19.

. . . . . . . .

El valor probatorio de la evidencia ofrecida por la apelante es dudoso. Para cualquier persona X hay un gran número de personas parecidas a ella. Pero sin duda la evidencia tiene algún valor probatorio. La magnitud de tal valor depende de las circunstancias del caso. Si la apelante hubiera ofrecido prueba que tendiera a conectar a la persona ofrecida como prueba con el delito, el valor probatorio hubiera sido considerable. Por ejemplo: si esa persona fue vista el día de los hechos en el lugar de los hechos, si esa persona fue vista con lo ocupado en el caso, etc. En ausencia de elementos adicionales, la prueba ofrecida era de escaso valor probatorio. En cuanto a los elementos "negativos" a los que alude la Regla 19, los tres primeros justifican la exclusión de la evidencia. La confusión y desorientación al jurado y el perjuicio indebido al Pueblo y a las víctimas, consiste en que no puede apreciar el valor objetivo de la prueba ante el predominio del elemento dramático de la aparición de la persona que se exhibe pero no declara o no es interrogada. Alegato del Procurador General, págs. 33–34.

## IV

El cuarto señalamiento de error es igualmente inmeritorio.(4)

El testigo Jorge González Meléndez no fue anunciado como testigo de defensa. Apéndice, págs. 62–70. Fue el Mi-

---

(4) "CUARTO: Si es un error del Honorable Tribunal Sentenciador que amerita la revocación de la sentencia el que el Honorable Tribunal Sentenciador no haya citado a un testigo de defensa (Jorge González Meléndez) cuya citación fue solicitada por la defensa y por el fiscal y cuyo testimonio constituía prueba pertinente que pudo [h]aber llevado a la exoneración de la acusada." Alegato de la apelante, pág. 11.

nisterio Público quien solicitó su comparecencia. La defensa se opuso por considerar la solicitud tardía. El tribunal de instancia expresó entonces su determinación de que González Meléndez fuera citado como testigo de refutación. Íd., pág. 70. En ese momento la defensa pudo solicitar que fuera citado, pero no lo hizo. Lo renunció.

Por las razones antes expresadas, *se dictará sentencia confirmatoria de las dictadas por el Tribunal Superior, Sala de Carolina.*

El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita.