ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| SONYA SOTO ROBLES Y EDWIN RÍOS ENCARNACIÓN, ET AL.<br><br>Parte Recurrida<br><br>v.<br><br>EFRAÍN ANDINO LUGO, DALILA CRUZ OTERO, Y OTROS<br><br>Parte Peticionaria | KLAN202500106 | *Apelación acogida como Certiorari*, procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2024CV00027<br><br>Sala: 402<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de febrero de 2025.

Compareció ante este Tribunal la parte peticionaria, el Sr. Efraín Andino Lago (en adelante, el "señor Andino Lago o el "Peticionario"), mediante un recurso de *certiorari* presentado el 10 de febrero de 2025. Nos solicitó la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, "TPI"), el 9 de enero de 2025, notificada y archivada en autos al día siguiente. Mediante dicho dictamen, el TPI excluyó como evidencia cierta prueba pericial anunciada por el Peticionario como parte del descubrimiento de prueba del caso.

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* y *revocamos* la *Resolución* recurrida.

**I.**

El caso ante nuestra consideración inició el 8 de enero de 2024, con la presentación de una "**Demanda**" sobre daños y perjuicios por parte de los señores Sonya Soto Robles (en adelante, la "señora Soto Robles") y Edwin Ríos Encarnación (en adelante, "Ríos Encarnación"), por sí y en representación de sus hijos menores de edad (en adelante y en conjunto "los Recurridos"), en contra del

señor Andino Lago, su esposa, la Sra. Dalila Cruz Otero, y otros codemandados desconocidos. Mediante la misma, expresaron que el 17 de mayo de 2023 su hija menor de edad KRS se encontraba jugando con otros niños en el parque de la Urbanización Los Caciques ubicado en el Municipio de Carolina. Alegaron que, mientras el Peticionario paseaba a su perro de raza "Pastor Alemán" sin bozal, la niña KRS se sentó junto a él y comenzó a acariciar al can. Manifestaron que mientras KRS tocaba al perro, éste la atacó y la mordió en su brazo izquierdo, causándole una mutilación de carácter grave. Destacaron que el señor Andino Lago no le advirtió a la menor sobre la agresividad de su perro, ni le indicó que no debía tocarlo. Adujeron que, debido a las lesiones, la menor KRS requirió atención de urgencia en la sala de emergencias del Hospital Universitario, donde le tomaron múltiples placas del brazo izquierdo y le realizaron varias pruebas para descartar enfermedades infecciosas. Detallaron que la menor fue puesta en un régimen de antibióticos por diez (10) días en dos (2) ocasiones para evitar que la herida se infectara.

Asimismo, señalaron que a la menor le suturaron el brazo izquierdo con 21 puntos, quedando este mutilado. Resaltaron que los médicos le recomendaron someter a la menor a una operación reconstructiva para intentar corregir la cicatrización. Indicaron que, como resultado del accidente, la menor sufre de estrés y profunda tristeza y no se atreve a jugar en el parque con otros niños porque vive con el temor de que le ocurra una situación similar a la del 17 de mayo de 2023. De igual manera, afirmaron que, junto al hermano de la menor KRS, han sufrido angustias mentales severas al tener que ver a su hija mutilada y adolorida. En vista de lo anterior, le solicitaron al TPI que declare "Ha Lugar" la "**Demanda**" y le ordene al Peticionario a satisfacer la suma de $110,000.00 en concepto de daños y perjuicios, una suma razonable en honorarios de abogados y cualquier otro pronunciamiento que proceda en derecho.

Posteriormente, el 8 de abril de 2024, el señor Andino Lago y la señora Cruz Otero presentaron su "**Contestación a Demanda**" en la que negaron la mayoría de las alegaciones expuestas en su contra y afirmaron que el perro nunca había manifestado conductas agresivas o violentas y que tampoco las mostró

durante el incidente en cuestión. Aclararon que, en múltiples ocasiones, el Peticionario le indicó a la menor que no se acercara ni tocara al perro, pero que ésta hizo caso omiso a sus advertencias. Asimismo, alegaron que no tenían obligación alguna de llevar al perro con bozal durante el paseo. Además, aseveraron que, en realidad, la menor KRS corría y gritaba por la calle Agueybaná, cuando sufrió una caída y, posteriormente se acercó al perro, sujetándolo por el cuello para abrazarlo. A tenor con lo anterior, le solicitaron al Tribunal que declarara "No Ha Lugar" la "**Demanda**" y condenara a los Recurridos al pago de las costas, gastos y honorarios de abogado correspondientes, así como cualquier pronunciamiento que proceda en derecho.

Más adelante, el 9 de julio de 2024, el foro recurrido celebró la *Conferencia Inicial*. Según se desprende de la *Minuta Resolución* de los procedimientos transcrita el 16 de julio de 2024, el TPI les concedió a las partes hasta el 31 de julio de 2024 para cursar el descubrimiento de prueba documental. En cuanto a la prueba pericial se refiere, surge de la referida *Minuta Resolución* lo siguiente:

> **Se le concedió [hasta el] <u>31 de agosto de 2024</u> a la parte demandada [aquí Peticionarios] para que conteste el interrogatorio y tendrá <u>30 días</u> adicionales para que la licenciada Sánchez Mitchell [representante legal de los Recurridos] informe al Tribunal mediante moción en cumplimiento de orden si efectivamente estará o no utilizando perito, es decir al <u>30 de septiembre de 2024</u>. De necesitar tiempo adicional solicitar dentro del término concedido. <u>La parte demandada tendrá el término concedido por las reglas para anunciar perito</u>.[1]**

Así las cosas, el foro *a quo* pautó continuación de la *Conferencia Inicial* para el 22 de octubre de 2024 y enfatizó en que la *Minuta Resolución* regiría los procedimientos del descubrimiento de prueba en el caso. Entretanto, el 20 de septiembre de 2024, los Recurridos presentaron una "**Moción al Amparo de la Regla 34.1**", a través de la cual argumentaron que el Peticionario tenía hasta el 30 de agosto de 2024 para remitir sus contestaciones respecto al primer pliego de interrogatorios y requerimiento de producción de documentos que le cursaron y que no lo hizo. Expresaron que, ante tal incumplimiento, el 10 de septiembre de 2024 le cursaron un comunicado al señor Andino Lago informándole que el plazo para contestar el descubrimiento de prueba ya había expirado y que no habían

---

[1] *Véase*, <u>Apéndice del Recurso de Certiorari</u>, pág. 19 (énfasis en el original y suplido).

recibido respuesta alguna. En consecuencia, le solicitaron al Tribunal que le ordenara al Peticionario a contestar el primer interrogatorio y a producir los documentos requeridos.

Llegado el día de la continuación de la *Conferencia Inicial* pautada, el TPI hizo la salvedad de que las partes debían informar sobre el descubrimiento de prueba que quedaba pendiente y que no se había establecido una fecha final para culminar el mismo. Como parte de los asuntos discutidos, el Peticionario solicitó un término adicional para cursar un descubrimiento de prueba documental y anunció que había contestado aquél notificado por los Recurridos. Tras discutir los asuntos pendientes, la representación legal de los Recurridos reconoció que los señores Andino Lugo y Cruz Otero anunciaron su intención de utilizar prueba pericial. De igual manera, se le informó al foro de instancia que el perro había fallecido. En la *Minuta Resolución* de los procedimientos, el TPI estableció como último día para culminar el descubrimiento de prueba el 5 de marzo de 2025 y pautó la *Conferencia Preliminar entre Abogados y Vista Transaccional* para el 6 de mayo de 2025. Dispuso, además, lo siguiente respecto a la presentación de prueba pericial:

> **En cuanto al perito, la parte demandante tendrá el término de 20 días luego de haber recibido el informe pericial de la parte demandada, para ver si utilizará perito. Luego se le concederá el t[é]rmino dispuesto por [las] reglas para rendir informe, término de 45 días.**[2]

Insatisfechos con lo anterior, el 30 de octubre de 2024, los Recurridos presentaron una "**Moción de Reconsideración o en la Alternativa, Moción In Limine para la Exclusión de Informe Pericial**" (en adelante, "Moción de Reconsideración") en la que afirmaron que el Peticionario condicionó la utilización de un perito a la presentación de prueba pericial por parte de ellos, lo cual indicaron no había ocurrido. Igualmente, señalaron que el señor Andino Lugo se había comprometido a cursar todo el descubrimiento de prueba escrito en o antes del 31 de julio de 2024. Por estas razones, le peticionaron al Tribunal que: (1) reconsiderara las órdenes dictadas en corte abierta durante la vista celebrada el 22 de octubre de 2024 y (2) que no permitiera al Peticionario realizar el

---

[2] *Véase*, Apéndice del Recurso de *Certiorari*, pág. 29 (énfasis en el original).

descubrimiento de prueba escrito fuera del plazo establecido ni anunciar un perito, pues había condicionado el uso de este tipo de prueba solo si ellos decidían utilizar prueba pericial.

Por su parte, en su *Moción in Limine* argumentaron que, de entenderse que procedía la utilización de prueba pericial, el informe producido carecía de los elementos necesarios para ser admitido y, por tanto, debía ser excluido. Sostuvieron que el hecho de que el can objeto del informe pericial anunciado por el señor Andino Lugo hubiera fallecido, les imposibilitaba examinarlo de manera independiente, circunstancia que alegaron los colocaba en una posición significativamente desventajosa para controvertir las conclusiones del informe pericial y que ello justificaba la exclusión de dicha prueba por representar un perjuicio indebido, al amparo de la Regla 403 de las de Evidencia, 32 LPRA Ap. VI, R. 403. De igual forma, acentuaron que el Peticionario conocía del informe rendido desde el 18 de julio de 2023 y no lo produjo hasta más de un año después, lo que denotaba una falta de diligencia en la producción de la prueba. Así pues, le solicitaron al TPI que excluyera el informe pericial presentado por el señor Andino Lago, pues ante la muerte del perro no podía validar la información, la metodología ni los principios empleados por el perito en su evaluación, de conformidad con la Regla 702 de Evidencia, 32 LPRA Ap. VI, R. 702.

Finalmente, el 9 de enero de 2025, el TPI dictó una *Resolución* en la que declaró "Ha Lugar" la *Moción de Reconsideración,* excluyendo así el informe pericial notificado por el Peticionario como evidencia dentro del descubrimiento de prueba en el caso. En específico, expresó lo siguiente:

> Ha lugar a la solicitud de reconsideración. Dado a la producción tardía por la parte Demandada de dicho informe y la imposibilidad de examinar independientemente al canino objeto del informe, se ordena excluir el informe pericial como evidencia en el presente caso. Se da por vencido el término para que la parte Demandada pueda anunciar perito.[3]

Inconforme con lo anterior, el 10 de febrero de 2025, el señor Andino Lago presentó el recurso de *certiorari* que nos ocupa y le imputó al foro de instancia la comisión del siguiente error:

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR HA LUGAR LA SOLICITUD DE RECONSIDERACI[Ó]N

---

[3] *Véase*, Apéndice del Recurso de *Certiorari*, pág. 1.

PRESENTADA POR LA PARTE DEMANDADA EXCLUYENDO EL INFORME PERICIAL POR PRESENTARSE TARDÍAMENTE Y POR LA IMPOSIBILIDAD DE EXAMINAR EL PERRO INDEPENDIENTEMENTE.

El 20 de febrero de 2025, los Recurridos presentaron "**Oposición a Certiorari**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.

Las Reglas de Procedimiento Civil de Puerto Rico fueron adoptadas con el fin ulterior de regular los procedimientos de naturaleza civil ante el Tribunal General de Justicia, con el objetivo de garantizar su solución de forma justa, rápida y económica. 32 LPRA Ap. V, R. 1. Para cumplir con este propósito, las referidas Reglas les conceden a los tribunales la facultad de imponer una serie de sanciones contra aquellas partes que incumplan con sus órdenes, estableciendo así su autoridad para atender controversias y resolverlas en sus méritos. Mitsubishi Motor v. Lunor y otros, 212 DPR 807, 818 (2023). En este contexto, el poder de los tribunales para imponer penalidades brinda la flexibilidad de elegir la sanción y ajustarla a los hechos particulares del caso y a la causa de acción instada. Íd.

En lo aquí pertinente, la Regla 34 de Procedimiento Civil, 32 LPRA Ap. V, R. 34, regula lo concerniente a las controversias que surjan en torno al descubrimiento de prueba y establece las consecuencias que tendrá una parte si no cumple con las órdenes emitidas por el tribunal. En específico, dispone lo siguiente:

> (b) Otras consecuencias. Si una parte o un funcionario o agente administrador de una parte, o una persona designada para testificar a su nombre según disponen las Reglas 27.6 ó 28, deja de cumplir una orden para llevar a cabo o permitir el descubrimiento de prueba, incluyendo una orden bajo las Reglas 32 y 34.2, el tribunal podrá dictar, con relación a la negativa, todas aquellas órdenes que sean justas; entre ellas las siguientes:
>
> (1) Una orden para que las materias comprendidas en las órdenes antes mencionadas o cualesquiera otros hechos designados por el tribunal, sean considerados como probados a los efectos del pleito, en conformidad con la reclamación de la parte que obtuvo la orden.

(2) **Una orden para impedir a la parte que incumpla que sostenga o se oponga a determinadas reclamaciones o defensas, o para prohibirle la presentación de determinada materia en evidencia**.

(3) Una orden para eliminar alegaciones o parte de ellas, o para suspender todos los procedimientos posteriores hasta que la orden sea acatada, para desestimar el pleito o procedimiento, o cualquier parte de ellos, o para dictar una sentencia en rebeldía contra la parte que incumpla.

(4) En lugar de cualquiera de las órdenes anteriores o adicional a ellas, una orden para considerar como desacato al tribunal la negativa a obedecer cualquiera de dichas órdenes, excepto una orden para someterse a un examen físico o mental.

(5) Cuando una parte deja de cumplir con una orden bajo la Regla 32 requiriéndole que presente para examen a otra persona bajo su tutela, custodia o patria potestad, o cualesquiera de las órdenes mencionadas en los subincisos (1), (2) y (3) de este inciso, excepto que la parte que incumpla demuestre que está impedida de presentar tal persona para examen.

(6) Una orden, bajo las condiciones que estime justas, para imponer a cualquier parte, testigo o abogado o abogada una sanción económica como resultado de sus actuaciones. 32 LPRA Ap. V, R. 34.3 (énfasis suplido).

Según se desprende de la transcrita Regla, el Tribunal puede sancionar a una parte mediante la prohibición de presentar cierta evidencia. Sin embargo, al igual que la desestimación de la demanda y la eliminación de las alegaciones, la prohibición de la presentación de determinada materia en evidencia constituye el castigo más severo para la parte que declina obedecer una orden para descubrir prueba. Mitsubishi Motor v. Lunor y otros, *supra*, pág. 819; Valentín v. Mun. de Añasco, 145 DPR 887, 895 (1998). De hecho, el Tribunal Supremo ha sido enfático en que las sanciones de la vigente Regla 34 de Procedimiento Civil, *supra*, deben ser precedidas de una orden judicial para llevar a cabo o permitir el descubrimiento de prueba y que la parte que interesa presentar la prueba haya incumplido la misma. Valentín v. Mun. de Añasco, *supra*, pág. 894. Por lo tanto, la imposición de estas sanciones siempre debe enmarcarse dentro de los principios de justicia, ya que su falta equivaldría a un abuso de discreción. Rivera Figueroa v. Joe's European Shop, 183 DPR 580 (2011).

En concordancia con lo anterior, nuestro Tribunal Supremo ha enfatizado que antes de imponer las sanciones anteriormente mencionadas, el foro primario debe ejecutar el orden de prelación que establece la Regla 39.2(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2 (a). Íd., pág. 820.  En detalle, indicó que el proceso a seguir es el siguiente:

Primero, el tribunal tiene que apercibir de la situación a la representación legal de la parte y concederle la oportunidad para responder. Si el representante legal no responde al apercibimiento, el tribunal le impondrá sanciones y notificará directamente a la parte sobre el asunto. Una vez que la parte haya sido informada o apercibida de la situación y de las consecuencias que el incumplimiento conlleva, deberá corregirla dentro del término que el tribunal de instancia le conceda. El plazo conferido será razonable y, salvo que las circunstancias del caso lo justifiquen, no será menor de treinta días. Si la parte no toma acción correctiva al respecto, "nunca se podrá querellar, ante ningún foro, de que se le despojó injustificadamente de su causa de acción y/o defensas". Cumplido este trámite, el tribunal se encontrará en posición para imponer la sanción que corresponda. Mitsubishi Motor v. Lunor y otros, *supra*, pág. 820.

En otras palabras, antes de prohibir la presentación de determinada prueba, el Tribunal de Primera Instancia debe: (1) advertir a la representación legal de la parte sobre la situación, (2) brindarle la oportunidad de exponer su postura al respecto, e (3) imponer primero otras sanciones que no incluyan la exclusión de dicha evidencia. De esta manera, se salvaguarda el derecho a aportar prueba a su favor que rige nuestro ordenamiento jurídico.

Asimismo, y dentro del contexto de exclusión de prueba, el máximo foro judicial local ha expresado lo siguiente:

Debe tenerse en cuenta, además, que **la medida severa de excluir del juicio el testimonio de un testigo crucial, que es análoga a la medida extrema de la desestimación, sólo debe usarse en circunstancias excepcionales, en casos en los cuales la conducta de la parte sancionada ha sido contumaz o de mala fe**[.]

[…]

Sanciones tan drásticas como la de autos no son favorecidas judicialmente y sólo se justifican **cuando la conducta de la parte a la que se le impone la sanción ha sido intencional**. Aplican al caso de autos, por analogía, nuestros pronunciamientos previos de que la imposición de sanciones procesales severas debe ocurrir **sólo cuando no exista duda de la irresponsabilidad o contumacia de la parte contra quien se tomó la medida**.

[…]

La regla aludida proporciona al tribunal varias sanciones distintas para lograr dicho propósito, para que éste las utilice de acuerdo con la situación particular que tenga ante sí. **La meta de este entramado procesal es darle efectividad al mecanismo de descubrimiento de prueba**. Valentín v. Mun. de Añasco, *supra*, págs. 895-896 (énfasis suplido).

## B.

La Regla 702 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 702, dispone que un perito general podrá testificar en forma de opinión o de otra manera cuando su conocimiento científico, técnico o especializado sea de ayuda para que el juzgador pueda entender la prueba o determinar un hecho en controversia. La precitada Regla 702 establece, además, que el valor probatorio del testimonio depende de:

(a) si el testimonio está basado en hechos o información suficiente;

(b) si el testimonio es el producto de principios y métodos confiables;

(c) si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso;

(d) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica;

(e) las calificaciones o credenciales de la persona testigo; y

(f)  la parcialidad de la persona testigo. Íd.

Así pues, se ha resuelto que la prueba pericial debe servir de ayuda al juzgador promedio para entender la evidencia y/o adjudicar un hecho en controversia. S.L.G. v. Mini-Warehouse, 179 DPR 322, 343 (2010). Luego de la determinación de que un testigo está cualificado como perito o las partes estipulan su capacidad, se puede presentar prueba sobre el valor probatorio del testimonio pericial para impugnar o sostener su credibilidad. *Véase*, Regla 703 de Evidencia, 32 LPRA Ap. VI, R. 703. Dicho valor probatorio está sujeto a las siguientes consideraciones: "'(a) si el testimonio está basado en hechos o información suficiente; (b) si el testimonio es el producto de principios y métodos confiables; (c) si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso; (d) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica; (e) las calificaciones o credenciales de

la persona testigo, y (f) la parcialidad de la persona testigo'". S.L.G. v. Mini-Warehouse, *supra*, pág. 344. Esto está cimentado en el hecho de que el "juzgador de los hechos no está obligado a aceptar las conclusiones de un perito". Íd., pág. 346.

Por otra parte, y atinente a la controversia que nos ocupa, la Regla 403 de Evidencia, 32 LPRA Ap. VI, R. 403, dispone que la evidencia pertinente puede ser excluida cuando su valor probatorio queda sustancialmente superado por cualesquiera de estos factores:

(a) riesgo de causar perjuicio indebido.

(b) riesgo de causar confusión.

(c) riesgo de causar desorientación del jurado.

(d) dilación indebida de los procedimientos.

(e) innecesaria presentación de prueba acumulativa. Íd.

Es mediante esta regla que el tribunal puede excluir evidencia pertinente, a pesar de la ausencia de una regla de exclusión, como lo es la prueba pericial. E.L. Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, San Juan, Pubs. JTS, 2009, pág. 74. "Para utilizar esta Regla como mecanismo de exclusión de prueba pertinente es necesario hacer una determinación sobre cuál es el valor probatorio de la evidencia vis a vis el efecto que tenga en el trámite o resolución de la controversia a base de los factores señalados". R. Emmanuelli Jiménez, Prontuario de Derecho Probatorio Puertorriqueño, 4ta ed., Ed. *Situm*, 2015, pág. 191. La discreción reconocida en esta regla es para excluir evidencia a pesar de que sea pertinente y que no haya regla de exclusión aplicable. E.L. Chiesa Aponte, Reglas de Evidencia Comentadas, 1era ed., Ediciones *Situm*, 2016, pág. 75. De lo anterior se desprende que los fundamentos de esta regla deben ser utilizados con cautela, toda vez que es norma reconocida que toda evidencia pertinente es admisible. Íd.

En cuanto al factor que menciona la Regla sobre el riesgo de causar perjuicio indebido, los comentaristas han sido consistentes en mencionar que no se puede excluir prueba admisible bajo este inciso a base de un mero perjuicio. Esto es así, puesto que toda prueba que se ofrece contra una parte es perjudicial

en la medida que favorece a una parte y perjudica a otra. *Véanse*, Chiesa Aponte, op. cit., pág. 77; Emmanuelli Jiménez, op. cit., pág. 192. Realmente, la Regla hace referencia a aquella "evidencia cuyo valor objetivo es mucho menor al que puede recibir por parte del juzgador en virtud de factores, por ejemplo, emocionales." Chiesa Aponte, op. cit., pág. 76.

Por tanto, para que la Regla 403 de Evidencia, *supra*, sirva de fundamento para no permitir la presentación de prueba admisible bajo este inciso, el tribunal tiene que sopesar qué intensidad o valor probatorio tiene la prueba y qué efecto perjudicial e injusto puede tener en la parte contra quien se ofrece. "En términos generales, se trata de prueba que puede conducir a un resultado erróneo cuando se apela meramente --y aunque no únicamente--a los sentimientos y a la emoción." Pueblo v. Ortiz Pérez, 123 DPR 216, 228 (1941). De ahí que se disponga que "[m]ientras más valor probatorio o más necesidad tenga la parte de presentar dicha evidencia, más difícil será utilizar la Regla para excluirla". Emmanuelli Jiménez, op. cit.,192.

> Cuando el tribunal realiza el balance correspondiente entre valor probatorio y efecto perjudicial indebido, aparte de considerar el valor probatorio o fuerza intrínseca de la evidencia, debe también considerar la necesidad de la misma para el proponente, en el sentido de si cuenta con otro tipo de evidencia, sin el potencial de perjuicio indebido, para establecer lo que intenta probar con la evidencia en cuestión. Si lo mismo puede ser probado con otra evidencia claramente admisible, el balance puede inclinarse hacia la exclusión. E.L. Chiesa Aponte, Tratado de Derecho Probatorio; Reglas de Evidencia de Puerto Rico y Federales, San Juan, Pubs. J.T.S., 1998, Tomo I, pág. 11.

**III.**

En el presente caso, el señor Andino Lago nos solicitó la revocación de la *Resolución* emitida por el TPI en la que declaró "Ha Lugar" la *Moción de Reconsideración* interpuesta por los Recurridos. Como único señalamiento de error, el Peticionario argumenta que el TPI erró al excluir el informe pericial que anunció bajo el fundamento de que el mismo fue entregado de manera tardía y que no era posible examinar al perro independientemente. Le asiste la razón. Veamos.

Surge del expediente ante nuestra consideración que el 8 de enero de 2024 los Recurridos presentaron una "**Demanda**" en contra del señor Andino Lago,

entre otros codemandados, con relación a un accidente en el que estuvo involucrado el perro de este último. Luego de múltiples trámites procesales, el 9 de julio de 2024 el TPI celebró la *Conferencia Inicial* en la que le concedió al Peticionario hasta el 31 de julio de 2024 para notificar descubrimiento de prueba documental. **Respecto a la prueba pericial, el foro de instancia se limitó a conceder hasta el 30 de septiembre de 2024 a los Recurridos para que éstos anunciaran si se disponían a utilizar prueba pericial o no**. Sobre el particular, el TPI le concedió al Peticionario el plazo reglamentario para anunciar prueba pericial, una vez los Recurridos así lo hicieran. Luego, durante la continuación de la *Conferencia Inicial* en el mes de octubre, el TPI le concedió una extensión del término al Peticionario para notificar descubrimiento de prueba documental a los Recurridos. En lo atinente a la prueba pericial, se limitó a indicar que los Recurridos contarían con un término de veinte (20) días luego de haber recibido el informe pericial del señor Andino Lago para informar si utilizarán un perito y que luego de ello, tendrán un término de 45 días para rendir su informe.

Así las cosas, el 30 de octubre de 2024, los Recurridos presentaron una *Moción de Reconsideración* en la que le solicitaron al Tribunal que no permitiera al señor Andino Lago a realizar el descubrimiento de prueba escrito fuera del término dispuesto, ni a anunciar evidencia pericial. Esta última petición fue declarada "Ha Lugar" bajo el fundamento de que el informe pericial en cuestión fue producido tardíamente y que el can objeto de esta controversia no podía ser examinado de manera independiente.

Del trámite procesal ocurrido en el caso que hemos reseñado en los acápites anteriores, notamos que la juzgadora de instancia nunca estableció o dispuso de un plazo específico al Peticionario para que éste anunciara prueba pericial. Simplemente, se limitó a concederle un plazo a los Recurridos para que informaran si utilizarán perito y **expresó que se le concedería al señor Andino Lago el término reglamentario una vez los Recurridos anunciaran si utilizarían o no prueba pericial durante el juicio**. Nótese, pues, que la controversia se suscitó cuando, dentro del requerimiento de producción de documentos que le cursaron los Recurridos, el señor Andino Lugo produjo copia

de un informe pericial que se aprestaba a utilizar en el juicio. No fue hasta ese momento que los Recurridos plantearon que la aludida pieza documental debía ser excluida porque fue producida tardíamente y, en la alternativa, que le causaría un perjuicio indebido, puesto que el perro había muerto y no estarían en posición validar la información, la metodología ni los principios empleados por el perito en su evaluación, de conformidad con la Regla 702 de Evidencia, *supra*.

En primer término, debemos partir de la premisa que en el presente caso el descubrimiento de prueba **no** ha culminado. Fue el propio TPI el que dispuso como fecha para culminar el descubrimiento de prueba el 5 de marzo de 2025. Asimismo, debe quedar meridianamente claro que, en lo relacionado con la prueba pericial, el TPI le concedió a los Recurridos hasta el 30 de septiembre de 2024 para notificar si iban a utilizar prueba pericial y una vez ello ocurriera, entonces se le concedería al Peticionario el plazo reglamentario para hacer lo propio. Y es que debe ser así, puesto que de esa manera se manejan diariamente los procedimientos de naturaleza civil en nuestros Tribunales. Primero la parte demandante notifica si utilizará prueba pericial en el juicio y una vez ello ocurre, entonces se le concede a la parte demandada un plazo para notificar si usará o no prueba pericial. Este paso es esencial, puesto que determinará el curso a seguir en el proceso de descubrimiento de prueba, sobre todo, en la toma de deposiciones a los peritos que se anuncien. Sobre este particular, discrepamos de la postura esgrimida por los Recurridos a los efectos de que ello equivale a que la parte demandada condicione la presentación de prueba pericial para establecer su teoría o probar defensas a que la parte demandante anuncie evidencia pericial. Es nuestra posición de que, independiente de la decisión que lleve a cabo la parte demandante, una parte demandada está en la libertad de utilizar prueba pericial en el juicio, siempre que cumpla con la orden de calendarización del foro de instancia.

Ahora bien, en lo relacionado con la producción tardía del informe pericial que justificó su exclusión, notamos que esa fue la única pieza documental que no se permitió presentar bajo ese fundamento. Esto es evidente pues de los autos se

desprende que la producción del mismo se dio a solo dos (2) días de haber producido el restante de la documentación solicitada por los Recurridos.

Conforme hemos adelantado en los acápites anteriores, la Regla 34 de Procedimiento Civil, *supra*, dispone las consecuencias que tendrá una parte si no cumple las órdenes emitidas por el Tribunal en torno al descubrimiento de prueba. Entre ellas se encuentra la exclusión de evidencia. No obstante lo anterior, no podemos perder de vista que dicha penalidad constituye un castigo severo para la parte que se niega a obedecer una orden del tribunal. Mitsubishi Motor v. Lunor y otros, *supra*, pág. 819. Por consiguiente, antes de imponer la referida sanción, el tribunal debe apercibir a la parte de la situación, brindarle la oportunidad de exponer su posición e imponer otras sanciones que no incluyan la exclusión de la evidencia en cuestión. Sanciones tan drásticas como la de autos no son favorecidas judicialmente y sólo se justifican **cuando la conducta de la parte a la que se le impone la sanción ha sido intencional**. Es decir, **sólo cuando no exista duda de la irresponsabilidad o contumacia de la parte contra quien se tomó la medida es que se podría validar la exclusión de prueba antes del juicio**. Valentín v. Mun. de Añasco, *supra*, págs. 895-896.

Tras un examen exhaustivo y sosegado del expediente ante nuestra consideración, incluyendo la "**Demanda**", la *Moción de Reconsideración* y la *Resolución* recurrida, hemos arribado a la conclusión de que no procedía la exclusión del informe pericial presentado por el señor Andino Lago. Nótese que el único término concedido por el TPI respecto a la presentación de prueba pericial fue para los Recurridos y sujeto al cumplimiento de estos últimos, entonces se activaría el plazo para que el señor Andino Lago anunciara si presentaría o no prueba pericial. Ante el hecho de que los Recurridos decidieron no presentar prueba pericial, entonces se produjo el informe del perito en controversia. Es decir, el Tribunal no emitió una orden notificando al Peticionario del término que tenía disponible para presentar la prueba en cuestión, simplemente condicionó un posible plazo reglamentario a que los Recurridos anunciaran si iban a utilizar evidencia pericial. Dado a que no se emitió una orden al respecto, es imposible concluir que el Peticionario presentó el informe en controversia fuera de un plazo

determinado y, por consiguiente, que no cumplió con un mandato del Tribunal. Máxime, cuando el proceso de descubrimiento de prueba **a esta fecha** aún no ha concluido, toda vez que el tribunal estableció expresamente que dicho periodo finaliza el 5 de marzo de 2025.[4]

Tal y como se aprecia, en el presente caso, el TPI adoptó una medida inicial de extrema severidad ante el presunto incumplimiento del señor Andino Lago al excluir el informe pericial. Distinto hubiese sido, si el tribunal hubiera dictado una orden y, como consecuencia del incumplimiento del señor Andino Lago, se le hubiera apercibido acerca de la situación y de la intención de excluir el informe en caso de que continuara negándose a cumplir dicha orden. Por el contrario, lo sucedido denota una vulneración del derecho al debido proceso de ley del Peticionario, puesto que la producción de dicha evidencia se dio mucho antes de que culminara el descubrimiento de prueba, **entiéndase, con por los menos cinco (5) meses de anterioridad al vencimiento del plazo dispuesto por el foro recurrido**. La actuación correcta hubiera consistido en establecer un término determinado para la presentación del informe pericial y, ante su inobservancia, imponer sanciones alternativas a la exclusión de la evidencia, salvaguardando así el derecho a descubrir prueba en los procedimientos de naturaleza civil. Además de lo anterior, somos de la opinión que los autos no reflejan una conducta contumaz, intencional o de mala fe por parte del Peticionario que justificara la severa sanción de excluir su prueba pericial. Por tanto, *ab initio*, no se justificó dicha sanción.

Ahora bien, aún si tomáramos por cierto la alegación de que el TPI le brindó un término específico al señor Andino Lago para presentar su informe pericial y que este lo produjo tardíamente porque se entiende que debió ser parte de la producción de prueba documental, tampoco procedía la exclusión de la referida prueba. Esto pues, en nuestro ordenamiento la exclusión de prueba pertinente bajo la Regla 403 de Evidencia, *supra*, no es la norma sino la excepción. Para excluir prueba a base del fundamento de que la misma ocasionaría un perjuicio indebido, la evidencia debe tener un valor objetivo mucho menor al que puede

---

[4] *Véase*, Apéndice del Recurso de *Certiorari*, pág. 30.

recibir por parte del juzgador. Es decir, el tribunal tiene que sopesar qué intensidad o valor probatorio tiene la prueba y qué efecto perjudicial e injusto puede tener en la parte contra quien se ofrece. En otras palabras, el juzgador tiene que hacer una determinación de que la prueba puede conducir a un resultado erróneo. **De ahí que se disponga que mientras más valor probatorio o más necesidad tenga la parte de presentar dicha evidencia, más difícil será utilizar la Regla para excluirla**.

Al examinar el expediente ante nuestra consideración, notamos que el TPI no efectuó el balance necesario para excluir prueba bajo las disposiciones de la Regla 403 de Evidencia, *supra*. Esto es así, toda vez que el Tribunal **nunca** tuvo ante sí el informe pericial para efectuar el análisis sobre valor probatorio y el efecto perjudicial indebido que suponía la presentación del mismo para los Recurridos. Ello es así, puesto que en esta etapa de los procedimientos el foro de instancia está impedido de tener contacto con la evidencia que las partes se apresten a presentar durante el juicio. Tampoco el TPI consideró el valor probatorio o fuerza intrínseca del informe, a la luz de la necesidad de la presentación de dicha prueba para el Peticionario, en el sentido de si este último contaba con otro tipo de evidencia, sin el potencial de perjuicio indebido, para establecer lo que intenta probar con la evidencia en cuestión. Simplemente, la determinación del foro *a quo* se fundamentó en meras alegaciones de los Recurridos, sin efectuarse el análisis que nuestro ordenamiento requiere para excluir prueba pertinente. Esto, simplemente, no tiene cabida en nuestro estado de derecho. Sobre todo, cuando la exclusión de la prueba por vía de la Regla 403 de Evidencia, *supra*, no se incentiva en escenarios en los que la misma tiene gran valor probatorio o cuando la parte tiene gran necesidad de presentarla en el juicio.

Finalmente, somos de la opinión de que el foro de instancia erró al concluir que procedía la exclusión del informe pericial por la imposibilidad de examinar independientemente al perro, a consecuencia de su muerte. Este fundamento surge por la alegación de los Recurridos a los efectos de que están imposibilitados de validar la información, la metodología y los principios empleados por el perito del señor Andino Lugo en su evaluación. Tal y como hemos adelantado, esos

aspectos que dispone la Regla 702 de Evidencia, *supra*, sobre la prueba pericial están atados al valor probatorio que el juzgador pueda concederle a la misma durante el juicio o durante una vista evidenciaria. Dichos factores nada tienen que ver o están relacionados con la admisibilidad de la prueba que permita su exclusión a esta etapa de los procedimientos. Además, es harto conocido que el juzgador de los hechos no está obligado a aceptar las conclusiones de un perito, por lo que las disposiciones de esta Regla no pueden servir de fundamento jurídico para excluir prueba a esta etapa de los procedimientos. Dichos elementos son únicamente evaluados por el juzgador de los hechos cuando se cualifica a una persona testigo como perito durante el juicio y luego de ello, evalúa la metodología empleada en su informe para arribar a sus conclusiones.

Así pues, no creemos que la muerte del animal sea un obstáculo para que los Recurridos puedan estar en posición de evaluar la metodología o validar la información contenida en el informe pericial notificado por el Peticionario, a través de su propio perito. De hecho, así lo aceptaron cuando expresaron en su alegato en oposición que "técnicamente se podría cuestionar la metodología del perito […]"[5]. En contraste, al examinar detenidamente los argumentos esgrimidos ante nuestra consideración notamos que los Recurridos no explican cómo no estarían en posición de efectuar una evaluación independiente de dicho informe pericial, tras el fallecimiento del can; simplemente aluden a que se les va a hacer imposible. Este aspecto tampoco quedó claro en la *Moción de Reconsideración* que se presentó ante el TPI. Del mismo modo, el hecho de que el Peticionario conociera de la existencia del informe pericial desde el 18 de agosto de 2023 tampoco nos parece pertinente por varias razones: (1) el caso de autos comenzó en el año 2024; (2) el Peticionario no está en la obligación de producir o divulgar aquella documentación o información que no se le sea requerida por vía de algún mecanismo de descubrimiento de prueba; y (3) el informe fue producido durante la vigencia del descubrimiento de prueba, como parte de una producción de documentos, que si bien el foro de instancia entendió tardía, su exclusión no era

---

[5] *Véase*, <u>Alegato en Oposición</u>, pág. 7.

el remedio adecuado y constituyó una sanción severa, de conformidad con lo resuelto por el Tribunal Supremo en <u>Valentín v. Mun. de Añasco</u>, *supra*.

En suma, concluimos que el TPI erró al declarar "Ha Lugar" la *Moción de Reconsideración* interpuesta por los Recurridos y proceder a excluir la prueba pericial anunciada por el Peticionario dentro del plazo estipulado por dicho foro para la culminación del descubrimiento de prueba.

**IV.**

Por los fundamentos antes expuestos, los cuales hacemos formar parte integral del presente dictamen, *expedimos* el auto de *certiorari* ante nuestra consideración y *revocamos* la *Resolución* recurrida. Se devuelve el caso al TPI para la continuación de los procedimientos cónsono con la presente *Sentencia*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones