ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| **EL PUEBLO DE PUERTO RICO** Apelado v. **ÁNGEL G. TORRES FRED** Apelante | KLAN202400524 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Fajardo** Crim. Núm.: NSCR202300038; NSCR202300039 Sobre: Art 6.05 y Art. 6.14, Ley 168 |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de octubre de 2025.

Comparece ante nos, mediante recurso de apelación, Ángel G. Torres Fred (en adelante, "apelante" o "Torres Fred"). Solicita la revocación de una sentencia de culpabilidad por portar y apuntar un arma de fuego sin licencia. (Artículos 6.05 y 6.14 de la *Ley de Armas de Puerto Rico de 2020*, Ley Núm. 168-2019, secs. 466d y 466m).

Examinados los escritos presentados, así como la transcripción estipulada de la prueba oral y el derecho aplicable, acordamos confirmar la *Sentencia* apelada.

**I.**

Surge del expediente ante nuestra consideración que, por hechos ocurridos el 20 de noviembre de 2022, el Ministerio Público presentó dos acusaciones contra Torres Fred: una por infracción al Artículo 6.05 de la Ley de Armas, *supra*, y otra por infringir el Artículo 6.14 de la misma ley. En específico, estas leen como sigue:

El referido imputado [Á]ngel G. Torres Fred, allá en o para el día 20 de noviembre de 2022 y en Río Grande[,] Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Fajardo, ilegal, voluntaria y criminalmente, transportó y/o portó un arma de fuego color negra[,] la cual se utilizó para cometer un delito. El delito de apuntar y disparar en un lugar abierto al público, poniendo en riesgo la seguridad y/o el orden público.

El referido imputado [Á]ngel G. Torres Fred, allá en o para el día 20 de noviembre de 2022 y en Río Grande[,] Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Fajardo, ilegal, a propósito, con conocimiento, temerariamente, intencional, y criminalmente, apuntó un arma de fuego [*sic*] color negra hacia la guagua Toyota Tacoma [sic] que conducía la Sra. Jackeline Enid Fonseca Ortiz [con] sus dos hijas menores de edad en el asiento posterior y al Sr. [Á]ngel D. Fonseca Ortiz en el asiento pasajero.

Luego de varios trámites procesales, el 4 de diciembre de 2023, se dio comienzo al juicio por tribunal de derecho contra Torres Fred.

La prueba presentada por el Ministerio Público consistió en la presentación de prueba testifical a través del testimonio de cinco (5) testigos y diversa prueba documental. Para un mejor entendimiento de los eventos suscitados ante el foro primario, procedemos a realizar un resumen de los testimonios esenciales vertidos.[1]

Sra. Jackeline Enid Fonseca Ortiz

La señora Fonseca Ortiz testificó que, el 20 de noviembre de 2022, se dirigió hacia la casa de su papá, el señor Ángel Fonseca Ortiz, en la calle Nueva del pueblo de Río Grande con sus dos hijas y su hermano, Ángel Daniel Fonseca Ortiz, para recoger unas pertenencias de su progenitor.[2] Explicó que, cuando se personaron al lugar a eso de las 4:00 p.m., se percataron de que, frente al hogar, había una serie de personas, entre ellas la expareja de su padre.[3] Relató que entró a la casa a recoger unas cosas, trámite que tomó unos quince (15) minutos, mientras su hermano vigilaba el portón

---

[1] El Ministerio Público también contó con el testimonio del agente Carlos D. González Díaz.

[2] Transcripción de la Prueba Oral (TPO) del 5 de diciembre de 2023, pág. 37, líneas 16-17, 24-28; pág. 38, línea 5.

[3] *Íd.*, pág. 39, líneas 5-8; pág. 40, líneas 10-12.

del hogar.[4] Entonces, dijo que su hermano le expresó que había alguien frente a la casa; cuando ella salió de la estructura con sus hijas, vio a Torres Fred, a quien identificó en sala, quien la miraba mientras se recostaba de un vehículo Toyota Corolla color azul oscuro.[5]

La señora Fonseca Ortiz enfatizó que miró a Torres Fred en varias ocasiones mientras montaba a sus hijas en el automóvil y su hermano la velaba desde la acera, y especificó que el apelante llevaba una *t-shirt* blanca, pantalón corto oscuro y tenis; lo describió además como un hombre alto, blanco, flaco, con cabello castaño oscuro, con orejas grandes y con un tatuaje que le cubría la mano izquierda.[6] Entonces, testificó que vio, a través del espejo del retrovisor de su auto, al señor Torres Fred caminando hacia su guagua, por lo cual instruyó a sus niñas que se agacharan luego de observar que el apelante se levantó la camisa y sacó una pistola color negra de su cintura y disparó al aire, lo cual la puso muy nerviosa.[7] Después de esto, dijo que la señora Luz Hernández Fred (en adelante, "señora Hernández Fred"), la expareja de su padre, se acercó a Torres Fred y le bajó la mano con la cual estaba apuntando el arma hacia la guagua de la testigo.[8] La señora Fonseca Ortiz expuso que, en seguida, Torres Fred se acercó a su vehículo y lo jamaqueó y le propició dos (2) puños.[9] La testigo esbozó que se dirigió posteriormente al cuartel policiaco de Río Grande para reportar lo transcurrido.[10]

La señora Fonseca Ortiz relató que se encontraba muy nerviosa cuando estaba en el cuartel y que, desde allí, logró hablar con su padre para confirmar la dirección de su casa y este le indicó

---

[4] *Íd.*, pág. 43, líneas 8-23.
[5] *Íd.*, pág. 44, líneas 22-23; pág. 45, líneas 23-30; pág. 46, líneas 1-14.
[6] *Íd.*, pág. 46, líneas 30-31; pág. 47, líneas 2-10, 20-28.
[7] *Íd.*, pág. 47, líneas 30-31; pág. 48, líneas 1-9; pág. 49, líneas 1-8.
[8] *Íd.*, pág. 49, líneas 1-10.
[9] *Íd.*, pág. 53, líneas 1-5.
[10] *Íd.*, líneas 5-7.

que al apelante lo conocían como "Cano" y que era un primo de la señora Hernández Fred.[11] Destacó que su hermano le tomó una foto a Torres Fred el día de los hechos, la cual fue admitida condicionalmente en evidencia.[12] Especificó que, luego de llegar a su casa, le mostró las fotografías a su padre y este lo reconoció y le dijo que su mamá se llamaba Miriam Fred; acto seguido, la testigo buscó ese nombre en *Facebook* y, en las fotos públicas que allí aparecían, vio a Torres Fred, a lo cual procedió a darles captura de pantalla (*screenshot*) y enviarlo a la policía; estos *screenshots* fueron debidamente autenticados y admitidos en evidencia.[13]

La señora Fonseca Ortiz relató que fue citada para identificar al apelante mediante una rueda de detenidos (*lineup*) el 19 de diciembre de 2022, pero esta se realizó mediante fotos porque ni el apelante ni su abogado asistieron al cuartel ese día; especificó que se le impartieron una serie de advertencias e instrucciones sobre el proceso antes de comenzarlo.[14] Entonces, luego de que le colocaran las nueve (9) fotos correspondientes frente a sí, ella expresó que el número dos (#2) fue el autor de los hechos; indicó que el agente no intervino en su selección.[15] La imagen y los documentos relacionados a la rueda de confrontación mediante fotografía fueron admitidos condicionalmente en evidencia.[16]

Agte. Carla Stephanie Faris Lebrón

La agente Faris Lebrón relató que, el 20 de noviembre de 2022, tuvo la oportunidad de entrevistar a la señora Fonseca Ortiz y esta le expresó lo ocurrido ese día.[17] La agente dijo que se personó a la escena para investigar y, en ella, halló un casquillo de bala.[18]

---

[11] *Íd.*, pág. 58, líneas 8-13.
[12] *Íd.*, líneas 23-31; pág. 62, líneas 1-4 pág. 68, líneas 8-12.
[13] *Íd.*, pág. 71, líneas 25-30; pág. 72, líneas 1-5; pág. 79, líneas 22-24.
[14] *Íd.*, pág. 86, líneas 12-16; pág. 87, líneas 9-10, 16-18; pág. 88, líneas 1-13.
[15] *Íd.*, pág. 88, líneas 13-15, 24-30.
[16] *Íd.*, pág. 90, líneas 6-8.
[17] TPO del 7 de diciembre de 2023, pág. 161, líneas 14-23.
[18] *Íd.*, pág. 163, líneas 18-21; pág. 169, líneas 28-30; pág. 170, líneas 1-2.

Luego, cuando entrevistó por segunda vez a la perjudicada, la testigo recalcó que la señora Fonseca Ortiz también describió al posible autor de los hechos como "un caballero de tez blanca, camisa blanca, pantalón corto y unos tenis[,] y que en su mano pues ten[í]a tatuajes".[19] Relató que la señora Fonseca Ortiz también le informó que su hermano le tomó unas fotos al individuo.[20] Entonces, expresó que la perjudicada le dijo que realizó una investigación en *Facebook* luego de haber hablado con su padre para confirmar la identidad de Torres Fred.[21] Acto seguido, la agente Faris Lebrón indicó que realizó una búsqueda del sospechoso en la mencionada red social y luego en la base de datos policial; así, identificó a Torres Fred en sala y lo señaló como la persona encontrada en sistema.[22] Además, puntualizó que la señora Fonseca Ortiz reconoció a Torres Fred porque tuvo la oportunidad de observarlo durante el transcurso de los hechos y porque su hermano le había tomado una fotografía.[23]

<u>Sr. Ángel Daniel Fonseca Ortiz</u>

El señor Fonseca Ortiz relató el incidente acontecido el 20 de noviembre de 2022.[24] Describió al autor de los hechos como un individuo "alto, blanco, flaco… bien recortado… y [que] tenía un tatuaje… en su mano izquierda";[25] procedió entonces a identificar al señor Torres Fred en sala como la persona que apuntó y disparó un arma.[26] Durante su exposición, el señor Fonseca Ortiz narró que le tomó unas fotografías al señor Torres Fred desde su teléfono celular, las cuales fueron debidamente autenticadas y admitidas en evidencia.[27]

---

[19] *Íd.*, pág. 168, líneas 9-10.
[20] *Íd.*, pág. 169, líneas 1-5.
[21] *Íd.*, pág. 174, líneas 2-7.
[22] *Íd.*, líneas 17-23; pág. 177, líneas 14-21; pág. 178, líneas 1-4.
[23] *Íd.*, pág. 177, líneas 24-28.
[24] TPO del 26 de diciembre de 2023, págs. 189-208.
[25] *Íd.*, pág. 207, líneas 1-4.
[26] *Íd.*, pág. 210, líneas 21-28.
[27] *Íd.*, págs. 208-210. Estas fotografías son algunas de las que ya se habían admitido condicionalmente en evidencia, pero, debido a que testificó la persona que las tomó, el tribunal procedió a remover la condición. Puntualmente, es

<u>Agte. Emmanuel Meléndez Santos</u>

El agente Meléndez Santos narró que estuvo encargado, junto con el agente González Díaz, de investigar la escena relacionada con lo ocurrido el 20 de noviembre de 2022.[28] Asimismo, recalcó que fue asignado posteriormente como agente investigador del caso, por lo cual entrevistó a la señora y al señor Fonseca Ortiz.[29] Expresó que, durante la entrevista con la señora Fonseca Ortiz, esta le indicó, entre otras cosas, que buscó al individuo en *Facebook* para obtener su nombre y confirmar que Torres Fred fue quien llevó a cabo lo ocurrido; esto permitió que el agente localizara su dirección en el sistema de la policía.[30]

El agente Meléndez Santos explicó que, tras consultar con fiscalía, citó personalmente a Torres Fred para llevar a cabo una rueda de confrontación, pero este se negó a firmar el formulario; en el día del *lineup*, ni Torres Fred ni su abogado se presentaron al CIC de Fajardo.[31] Por ello, relató que se realizó una rueda de confrontación fotográfica y que la señora Fonseca Ortiz identificó a Torres Fred, circulando su imagen, la segunda, con un lápiz.[32] Así, el agente Meléndez Santos identificó al apelante en sala.[33]

El agente Meléndez testificó que, como la señora Fonseca Ortiz le describió el arma de fuego utilizada durante la comisión del delito como de color negro, este procedió a obtener el casquillo de bala ocupado en la escena para entonces corroborar si Torres Fred tenía autorización para portar armas de fuego.[34] El testigo puntualizó que el resultado de la referida búsqueda fue que Torres Fred no contaba con una licencia para portar armas de fuego en Puerto Rico.[35]

---

relevante el *Exhibit* 2 del Pueblo, el cual es la fotografía tomada por el señor Fonseca Ortiz el día de los hechos.

[28] TPO del 22 de febrero de 2024, pág. 262.

[29] *Íd.*, págs. 263-265.

[30] *Íd.*, pág. 265, líneas 5-13.

[31] *Íd.*, pág. 267, líneas 26-31; pág. 268, líneas 14-22; pág. 271, líneas 30-31.

[32] *Íd.*, pág. 273, líneas 8-12; pág. 274, líneas 18-20.

[33] *Íd.*, pág. 275, líneas 28-31; pág. 276, líneas 1-7.

[34] *Íd.*, pág. 266, líneas 17-19; pág. 270, líneas 14-19.

[35] *Íd.*, pág. 271, líneas 5-6.

Examinada la prueba desfilada ante sí y escuchadas las argumentaciones de las partes, el 9 de mayo de 2024, el juzgador de instancia declaró culpable a Torres Fred por dos cargos de violación a la Ley de Armas, *supra*, uno por el Artículo 6.05 y el otro por el Artículo 6.14. Por tanto, le impuso al apelante una pena consecutiva total de once (11) años y un (1) día de cárcel; diez (10) años correspondientes a la infracción del Artículo 6.05 y un (1) año y un día por la transgresión del Artículo 6.14. El mencionado dictamen fue notificado el 10 de mayo de 2024.

Inconforme con la *Sentencia* pronunciada por el TPI, la parte apelante acude ante nosotros mediante el recurso de apelación de epígrafe, en el cual plantea los siguientes señalamientos de error:

> Err[ó] el Honorable Tribunal en celebrar el juicio en violación de las disposiciones contenidas en la Regla 64 n(4) de las de Procedimiento Criminal y el derecho constitucional a un juicio rápido. Lo anterior toda vez que la lectura de acusación del caso de epígrafe se celebró el 20 de noviembre del 2022 y no fue hasta el 6 de julio del 2023 que se inició el juicio en su contra. Incluso, habiéndose comenzado el juicio sin haberse culminado el proceso de descubrimiento de prueba.

> Erró el Honorable Tribunal de Primera Instancia [al] emitir un fallo de culpabilidad por el delito contemplado en el artículo 6.05 de la Ley 168, sin que se haya [*sic*] sido presentada ante su consideración evidencia sobre todos los elementos del delito[,] según tipificado.

> Err[ó] el Honorable Tribunal de Primera Instancia al declarar NO HA LUGAR [a] la solicitud de desestimación presentada por la Defensa al amparo de Pueblo v. Ortiz Vega, 149 DPR 363 (1999) y de Brady v. Maryland, 373 U.S. 83 (1963). Lo anterior debido a que el Ministerio Público omitió entregar a la Defensa un informe mono dactilar que contenía evidencia exculpatoria.

> Err[ó] el Honorable Tribunal de Primera Instancia al admitir la identificación vaga y escueta del apelante. Lo anterior por la misma [no] contener garantías de confiabilidad. Además, por la misma ser sugestiva y el producto de prueba de referencia.

El 9 de septiembre de 2025, el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General, presentó su alegato en oposición. Con el beneficio de la transcripción de la prueba oral,

la evidencia presentada y la comparecencia de todas las partes, resolvemos.

**II.**

**A.**

Como cuestión de umbral, debemos repasar la norma relacionada con el *quantum* y el peso de la prueba en los casos criminales y aquella referente a nuestra capacidad revisora de los dictámenes de las causas penales.

Como sabemos, a todo acusado se le presume inocente hasta que su culpabilidad sea probada más allá de duda razonable. Véase Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. Por lo tanto, para derrotar esta presunción, el Pueblo deberá presentar prueba sobre todos los elementos del delito y su conexión con el acusado, así como la intención o negligencia criminal. *Pueblo v. Resto Laureano*, 206 DPR 963, 967 (2021); *Pueblo v. Henríquez, Urbáez*, 205 DPR 311, 323-324 (2020); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000). Así, la carencia de prueba sobre alguno de los elementos del delito implicaría el incumplimiento por parte del Estado con su carga probatoria y supondría la absolución del acusado con respecto al delito imputado. *Pueblo v. Negrón Ramírez*, 213 DPR 895 (2024).

Sin embargo, la prueba presentada no supone la necesidad u obligación de probar la comisión del delito con certidumbre matemática. *Pueblo v. Toro Martínez*, 200 DPR 834, 856 (2018). La misma deberá ser aquella que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Irizarry*, 156 DPR 780, 787 (2002); véase *Pueblo v. Acevedo Estrada*, supra y *Pueblo v. Rodríguez Román*, 128 DPR 121, 131 (1991). Además, nuestro Tribunal Supremo ha puntualizado en repetidas ocasiones que la evidencia directa de un testigo que le merezca credibilidad puede ser suficiente para establecer un hecho. *Pueblo v. Chévere Heredia*, 139 DPR 1, 15

(1995); Regla 110 de las de Evidencia, 32 LPRA Ap. VI, R. 110. Lo anterior, aún cuando el testimonio no sea "perfecto", toda vez que es al juzgador de los hechos a quien le corresponde dirimir la credibilidad de un testigo cuando haya partes de su testimonio que no sean aceptables. *Pueblo v. Chévere Heredia*, supra, págs. 15-16.

Por otra parte, la apreciación de la prueba corresponde al foro sentenciador; los tribunales apelativos solo intervendremos con ella cuando exista error manifiesto, pasión, prejuicio o parcialidad. *Pueblo v. Negrón Ramírez*, supra, citando a *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2008); *Pueblo v. Acevedo Estrada*, supra. Lo anterior cobra mayor vigencia cuando se trata de la prueba testifical desfilada en el juicio. *Pueblo v. Negrón Ramírez*, supra. Ello es así debido a que son los foros de instancia los que se encuentran en mejor posición para aquilatar la prueba desfilada porque estos tienen la oportunidad de observar y escuchar a los testigos. *Pueblo v. Acevedo Estrada*, supra; *Pueblo v. Rosario Reyes*, 138 DPR 591, 599 (1995).

Por tanto, a menos de que existan las situaciones antes señaladas o que la apreciación de la prueba no encuentre cabida en la realidad fáctica, sea inherentemente imposible o increíble, este Tribunal de Apelaciones se abstendrá de intervenir con dicho ejercicio. *Pueblo v. Acevedo Estrada*, supra. Ahora bien, los foros apelativos pueden intervenir con tal apreciación cuando, de una evaluación minuciosa, surjan "serias dudas, razonables y fundadas, sobre la culpabilidad del acusado". *Pueblo v. Casillas Díaz*, 190 DPR 398 (2014), citando a *Pueblo v. Santiago*, 176 DPR 133, 148 (2009).

Un tribunal apelativo también podrá intervenir con las determinaciones de hechos y apreciación de la prueba que realice el juzgador de primera instancia si se demuestra que este incurrió en un abuso de discreción al apreciar y adjudicar la prueba presentada

ante él. *Pueblo v. Negrón Ramírez,* supra, citando *a Pueblo v. Rivera Montalvo,* supra. En armonía con lo anterior, "un tribunal apelativo incurre también en abuso de discreción si sustituye el criterio de apreciación de la prueba realizado por el juzgador de hechos en el foro de instancia, o las determinaciones de hechos realizadas por éste, sin haber mediado prejuicio, parcialidad, pasión o error manifiesto". *Pueblo v. Negrón Ramírez,* supra.

**B.**

Nuestra Ley Suprema dispone que a todo acusado le asiste el derecho a juicio rápido. Art. II, Sec. 11, Const. E.L.A., LPRA, Tomo I; *Pueblo v. Rivera Colón,* 119 DPR 315, 319-320 (1987). Este entra en vigor desde que el imputado de delito es detenido o está sujeto a responder (*held to answer*); es decir, desde que se determina la existencia de causa probable para arrestar, citar o detener. *Pueblo v. Rivera Santiago,* 176 DPR 559, 569-570 (2009). La jurisprudencia ha reconocido que el derecho a juicio rápido persigue un interés dual; por un lado, procura proteger al acusado contra su detención opresiva, minimizar sus ansiedades y preocupaciones, así como reducir las posibilidades de que su defensa se afecte; mientras que, por otro, responde a las exigencias de la sociedad de encausar con celeridad a los acusados de transgredir nuestro ordenamiento. *Pueblo v. Rivera Santiago,* supra*; Pueblo v. Valdés et al.,* 155 DPR 781, 789 (2001).

A tono con nuestra Constitución, el derecho procesal criminal trazó el alcance de este derecho, toda vez que fijó términos para cada fase de los procedimientos. Estos transcurren desde las etapas entre el arresto y el juicio. La Regla 64 (n) de las de Procedimiento Criminal, 34 LPRA Ap. II, R. 64, instituye como fundamento para la desestimación de una denuncia o acusación que no se hubieren completado los trámites judiciales necesarios dentro de los términos aplicables. En lo aquí concerniente, esta dispone lo siguiente:

La moción para desestimar la acusación o denuncia, o cualquier cargo de las mismas sólo podrá basarse en uno o más de los siguientes fundamentos:

[…]

(n) Que existen una o varias de las siguientes circunstancias, a no ser que se demuestre justa causa para la demora o a menos que la demora para someter el caso a juicio se deba a la solicitud del acusado o a su consentimiento:

[…]

(3) Que el acusado estuvo detenido en la cárcel por un total de sesenta (60) días con posterioridad a la presentación de la acusación o denuncia sin ser sometido a juicio.

(4) Que el acusado no fue sometido a juicio dentro de los ciento veinte (120) días siguientes a la presentación de la acusación o denuncia.

[…]

Se dispone que el tribunal no podrá desestimar una acusación o denuncia, bajo este inciso, sin antes celebrar una vista evidenciaria. En la vista, las partes podrán presentar prueba y el tribunal considerará los siguientes aspectos:

(1) Duración de la demora;
(2) razones para la demora;
(3) si la demora fue provocada por el acusado o expresamente consentida por éste;
(4) si el Ministerio Público demostró la existencia de justa causa para la demora, y
(5) Los perjuicios que la demora haya podido causar.[36]

Una vez celebrada la vista, el magistrado consignará por escrito los fundamentos de su determinación, de forma tal que las partes tengan la oportunidad efectiva y objetiva de evaluar, si así lo solicitan, la reconsideración o revisión de dicha determinación.

*Íd.*

En armonía con lo anterior, nuestra jurisprudencia también ha establecido que, cuando surja un planteamiento de violación al derecho de rápido enjuiciamiento, **el TPI tendrá que sopesar, en**

---

[36] Con relación a este criterio se ha establecido que el imputado solo tiene que demostrar que —debido a la dilación— ha sufrido un perjuicio, más no estado de indefensión. El mismo tiene que ser específico; no basta con meras generalidades ni perjuicios abstractos, como tampoco cómputos puramente matemáticos. Tiene que ser real y sustancial. *Pueblo v. Rivera Santiago, supra; Pueblo v. Guzmán, supra,* pág. 156; *Pueblo v. Valdés et al., supra,* pág. 792.

**conjunto y con otras circunstancias relevantes, los criterios mencionados**. Véase *Pueblo v. Guzmán*, 161 DPR 137, 154-155 (2004); *Pueblo v. Valdés et al.*, supra, pág. 792; *Pueblo v. Rivera Tirado*, 117 DPR 419, 433 (1986). Ninguno de los antedichos factores es determinante y están sujetos a un balance. *Íd.*

Por otro lado, es norma reiterada que, de ocurrir una inobservancia de los términos en unión a la oportuna alegación de violación al derecho a juicio rápido, recae sobre el Pueblo el peso de demostrar la existencia de justa causa para la demora; la renuncia expresa, voluntaria y con pleno conocimiento de este derecho por parte del imputado, o que la tardanza es atribuible al propio imputado, ya sea porque solicitó la suspensión o consintió a ella. *Pueblo v. Guzmán,* supra, pág. 156; *Pueblo v. Valdés et al.*, supra, pág. 791.

Ahora bien, los términos dispuestos en la Regla 64 (n) de las de Procedimiento Criminal, *supra*, no son absolutos. En *Pueblo v. Cordero Rodríguez*, 110 DPR 638, 639–640 (1981), el Tribunal Supremo explicó que "[e]l derecho a un juicio rápido es una cuestión puramente relativa. Depende de muchísimas circunstancias y debe ajustarse a los consabidos aplazamientos. Garantiza los derechos del acusado; pero no excluye los derechos de la justicia pública". *Íd.* Esto se debe a que, al estar contemplada la "justa causa" como factor para permitir demora en los procedimientos, es ostensible que el "derecho a juicio rápido" está sujeto a las exigencias y circunstancias particulares de cada caso.

Dado a lo anterior, se ha resuelto que la determinación de lo que constituye justa causa bajo la Regla 64 (n) de las de Procedimiento Criminal, *supra*, es, por necesidad, un problema de definición a realizarse caso a caso y a la luz de la totalidad de las circunstancias. *Pueblo v. Valdés et al.*, supra, pág. 790. Sin embargo, debemos destacar que la razonabilidad será el criterio

rector al momento de dirimir si la razón que motivó la demora constituyó justa causa. Queda, por tanto, excluida como justa causa toda demora opresiva e intencional. *Pueblo v. Guzmán*, supra, a las pág. 154-156. Todo lo antes expuesto denota que el quebrantamiento del derecho a juicio rápido no es una problemática de "tiesa aritmética" donde la inobservancia del término dispuesto constituye por sí sola una transgresión, como tampoco acarrea la desestimación irreflexiva de la denuncia o acusación. *Íd.*

### C.

La *Ley de Armas de Puerto Rico de 2020*, Ley Núm. 168-2019, 25 LPRA sec. 461 (en adelante, "Ley de Armas"), contiene una serie de delitos no contemplados explícitamente en el Código Penal de Puerto Rico, Ley Núm. 146-2012, 33 LPRA sec. 5001. Entre los delitos establecidos en este estatuto especial, el Legislador encontró necesario tipificar como conducta no permitida el poseer, transportar o usar un arma de fuego sin la debida autorización. Sobre el particular, el Artículo 6.05 de la Ley de Armas, *supra*, dispone que:

> Toda persona que porte, transporte o use cualquier arma de fuego, sin tener una licencia de armas vigente, salvo lo dispuesto para los campos de tiro o lugares donde se practica la caza, incurrirá en delito grave y convicto que fuere, será sancionada con pena de reclusión por un término fijo de diez (10) años, sin derecho a sentencia suspendida, a, o a disfrutar de los beneficios de algún programa de desvío, o a cualquier alternativa a la reclusión reconocida en esta jurisdicción. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cinco (5) años.

> [...]

> *Íd.*, sec. 466d.

Asimismo, el Legislador clasificó como conducta no permitida el apuntar o disparar un arma de fuego de manera contraria a la ley. Sobre ello, el Artículo 6.14 de la Ley de Armas, *supra*, establece que:

Incurrirá en delito grave con pena de reclusión por un término fijo de cinco (5) años, toda persona que, salvo en casos de legítima defensa, propia o de terceros, o de actuaciones en el legítimo desempeño de funciones oficiales o actividades legítimas de deportes:

(a) voluntariamente dispare cualquier arma de fuego fuera de los lugares autorizados por esta Ley, aunque no le cause daño a persona alguna; o

(b) intencionalmente apunte hacia alguna persona con un arma de fuego, aunque no le cause daño a persona alguna.

De mediar circunstancias agravantes, la pena establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año.

[...]

*Íd.*, sec. 466m.

De manera más simplificada, el *Libro de Instrucciones al Jurado*, analizando el Artículo 6.14 de la Ley de Armas, *supra*, dispone que los elementos de la primera modalidad son: (1) voluntariamente; (2) disparar cualquier arma de fuego, y (3) fuera de los lugares autorizados por la Ley de Armas. Secretariado de la Conferencia Judicial y Notarial, *Libro de Instrucciones al Jurado*, Rev. 2022, Poder Judicial de Puerto Rico, pág. 368. Por otro lado, los elementos de la segunda modalidad son: (1) intencionalmente, y (2) apuntar hacia alguna persona con un arma de fuego. *Íd.*, pág. 369.

**D.**

El derecho que tiene un imputado a defenderse en un proceso criminal conlleva el informarse debidamente en la preparación de su defensa y a obtener, mediante el mecanismo de descubrimiento de prueba, evidencia que pueda favorecerle. *Pueblo v. Arocho Soto*, 137 DPR 762, 766 (1994). La Regla 95 de las de Procedimiento Criminal, 34 LPRA Ap. II, R.95, establece el descubrimiento de prueba a favor del acusado con el fin de evitar las "expediciones de pesca" en el sumario y los archivos de fiscalía. *Pueblo v. Custodio Colón*, 192 DPR

567, 586 (2015); *Pueblo v. Irizarry*, 160 DPR 549, 566 (2003). Si bien el derecho al descubrimiento de prueba es consustancial al derecho que tiene el imputado de defenderse, este no es absoluto. *Pueblo v. Arocho Soto*, supra.

Como es sabido, el Ministerio Público tiene la obligación de descubrir toda evidencia favorable que sea relevante a la inocencia o el castigo del acusado. Dicho de otra forma, el Pueblo tiene el deber de revelar cualquier indicio de falso testimonio y de descubrir evidencia exculpatoria cuando tal falsedad o carácter exculpatorio es, o debió ser, conocida por este. *Pueblo v. Arzuaga*, 160 DPR 520, 535 (2003). Ello, sin necesidad de una solicitud previa por parte de la defensa y sin importar si las Reglas de Procedimiento Criminal proveen o no para tal descubrimiento en la etapa específica de los procedimientos en que se encuentren. *Íd.*; *Pueblo v. Vélez Bonilla*, 189 DPR 705,718 (2013), citando a *Brady v. Maryland*, 373 US 83 (1963). En lo pertinente, la referida Regla 95 de las de Procedimiento Criminal, *supra*, establece que la obligación del fiscal de descubrir información o evidencia a la defensa se activa con la presentación del pliego acusatorio; esto es, con la acusación en casos de delito grave. *Pueblo v. Irizarry*, supra, pág. 567, citando a E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1993, Vol. III, pág. 320.

Como se sabe, no existe un derecho constitucional a descubrir prueba antes del juicio, excepto cuando exista evidencia exculpatoria. *Pueblo v. Arzuaga*, supra, pág. 535. En innumerables ocasiones, nuestro Más Alto Foro ha interpretado la Regla 95 de las de Procedimiento Criminal, *supra*, y ha reconocido que existen circunstancias en las cuales el descubrimiento de prueba a favor del acusado trasciende a lo estatuido por las reglas procesales, especialmente cuando se fundamenta en la cláusula del debido proceso de ley de nuestra Constitución. *Pueblo v. Vélez Bonilla*,

supra; *Pueblo v. Rodríguez Sánchez*, 109 DPR 243, 246 (1979). No obstante, este mecanismo procesal fundado en el debido proceso de ley no se debe invocar livianamente. *Íd.* Por lo cual, no basta con una mera alegación, sino que la defensa deberá demostrar *prima facie* y convincentemente la materialidad de esa evidencia que peticiona descubrir. *Íd.*, pág. 249.[37]

### E.

La convicción de un acusado está subordinada a la existencia de prueba que lo vincule —más allá de duda razonable— como la persona que perpetró los actos antijurídicos que pesan en su contra. Por consiguiente, la ausencia de dicha evidencia implica que ninguna persona podrá ser declarada culpable de delito alguno. Por ello, la identificación del acusado es una etapa neurálgica en todo procedimiento criminal. Véase *Pueblo v. Rodríguez Maysonet*, 119 DPR 302, 309 (1987); *Pueblo v. Gómez Incera*, 97 DPR 249, 251 (1969). Por su importancia, se ha regulado este proceso mediante la inserción de mecanismos de identificación. Los aquí competentes son los estatuidos en las Reglas 252.1 y 252.2 de las de Procedimiento Criminal de Puerto Rico, 34 LPRA Ap. II, a saber: la rueda de detenidos y la identificación por medio del uso de fotografías.

Aunque es cierto que una identificación inadecuada debe ser eliminada o suprimida, ya que, de admitirse, se transgrediría el derecho que posee todo acusado a un debido proceso de ley, es la totalidad de las circunstancias que rodea cada caso el criterio rector que dispondrá de la situación. *Íd.* Es decir, se tienen que examinar los siguientes elementos: (1) la oportunidad que tuvo el testigo de

---

[37] En *Pueblo v. Vélez Bonilla*, supra, pág. 720, el Tribunal Supremo de Puerto Rico definió lo que es la prueba exculpatoria como:
   [T]oda aquella [prueba] que resulta favorable al acusado y que posee relevancia en cuanto a los aspectos de culpabilidad y castigo. De forma que si la evidencia en cuestión, por la razón que sea, no alcanza esas características, no califica como prueba exculpatoria.

observar al ofensor al tiempo en que cometía el crimen; (2) el grado de atención del testigo; (3) la corrección de la descripción previa del criminal por el testigo; (4) el nivel de certeza demostrado por el testigo en la confrontación, y (5) el tiempo transcurrido entre el crimen y la confrontación. *Pueblo v. Hernández González,* 175 DPR 274 (2009)*; Pueblo v. Mejías,* supra*,* pág. 93*; Pueblo v. Ortiz Pérez,* 123 DPR 216, 224 (1989); *Pueblo v. Mattei Torres,* 121 DPR 600, 608 (1988). Consecuente, la existencia de algún grado de sugestión en el proceso de identificación no conlleva automáticamente su supresión, ya que, de existir suficientes garantías de confiabilidad a la luz de los factores anteriores, esta debe ser admitida. *Pueblo v. Mejías,* supra*; Pueblo v. Ortiz Pérez,* supra.

El profesor Ernesto L. Chiesa Aponte, al evaluar las expresiones del Tribunal Supremo de Puerto Rico sobre el particular, sostuvo que "[e]l elemento de si era necesario celebrar una rueda que no se efectuó afectará más el valor probatorio que la admisibilidad de la prueba de identificación en el juicio". E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, 1era ed., Colombia, Editorial Forum, 1991, Vol. I, Sec. 5.2, pág. 222.

Por otro lado, la identificación por medio de fotografías solo procederá como método alterno y en las instancias claramente delineadas en la Regla 252.2 de las Reglas de Procedimiento Criminal, *supra*; a saber:

> (a) Los agentes y funcionarios del orden público podrán hacer uso de fotografías para identificar el posible autor de un acto delictivo únicamente en las siguientes circunstancias:
>
> (1) Cuando por razones fuera del control de los agentes o funcionarios del orden público no fuere posible o necesario realizar una rueda de detenidos.
>
> (2) Cuando no exista sospechoso del acto delictivo.
>
> (3) Cuando existiendo un sospechoso éste se negare a participar en la rueda, o su actuación o ausencia

impidiese que la misma se efectúe adecuadamente.

*Íd.*

Se ha resuelto que la confrontación por foto procede aún en los supuestos en que no concurra ninguna de las instancias antes indicadas, siempre y cuando esta se realice en un ambiente libre de sugestión o que las circunstancias del caso no requieren emplear otros métodos de identificación. Asimismo, el Tribunal Supremo de Puerto Rico consignó que la confrontación mediante fotografía será repudiada solo cuando se esté ante un escenario crasamente sugestivo. *Pueblo v. Mejías,* supra, págs. 92-93; *Pueblo v. Rosso Vázquez,* 105 DPR 905, 908 (1977).[38]

No empece a lo aquí plasmado, los procedimientos de identificación antes discutidos no siempre tienen que ser observados. Su utilización no es indispensable cuando el testigo conoce previamente al sospechoso; cuando este observó a la persona durante un tiempo razonable mientras perpetraba los hechos por los cuales es acusado, lo que genera una identificación certera, precisa y segura, o cuando la identificación se suscita sin la intervención de los funcionarios del Estado. De encontrarse presente alguna de estas circunstancias, las salvaguardas requeridas por nuestra Ley Suprema para la confiabilidad de la identificación no son de aplicación. Por lo tanto, en estos escenarios, el Estado ni está compelido a celebrar una rueda de detenidos ni una identificación por fotografía. *Pueblo v. Mattei Torres,* supra, pág. 608; *Pueblo v. Montañez Ramos,* 100 DPR 911, 916 (1972).

**III.**

En la presente causa, el apelante fue hallado culpable de poseer un arma de fuego sin tener una licencia expedida por el Estado y de apuntar un arma de fuego contra la señora Fonseca

---

[38] Véase Chiesa Aponte, *op. cit.,* págs. 238-239.

Ortiz. Esto tras el Ministerio Público demostrar que Torres Fred, a propósito y con conocimiento, poseyó un arma de fuego sin la debida autorización para ello y que esa arma fue utilizada para apuntar intencionalmente a la señora Fonseca Ortiz mientras ella se encontraba dentro de su vehículo con sus hijas menores. Por estos hechos, el foro primario le impuso al apelante la pena consecutiva de once (11) años y un (1) día de reclusión carcelaria. Inconforme con dicha determinación, acude ante nos y alega que el tribunal de instancia erró al emitir la *Sentencia* apelada y solicita que la revoquemos o modifiquemos, según sea procedente en derecho.

En sus primeros señalamientos de error, el apelante sostiene que el foro recurrido incidió al celebrar el juicio en violación a los términos de juicio rápido y sin haber culminado el descubrimiento de prueba. Enfatizó que las dilaciones se debieron al Ministerio Público, y que la lectura de la acusación se llevó a cabo el 20 de noviembre de 2022 y el 6 de julio de 2023 inició el juicio en su contra.

Asimismo, Torres Fred arguye que el foro primario incidió al rendir un fallo de culpabilidad por el delito de poseer un arma de fuego sin la debida autorización porque no se presentó evidencia suficiente sobre todos los elementos de la conducta prohibida.

De manera similar, el apelante argumenta que debió proceder la desestimación del recurso porque el Pueblo no le entregó un informe con prueba exculpatoria a tiempo.

Por último, Torres Fred enfatiza que el foro apelado se equivocó en entender que la identificación fue suficiente, a pesar de que esta fue vaga y escueta; además, arguye que esta carece de garantías de confiabilidad y que fue producto de prueba de referencia.

Tras un examen detenido del expediente ante nuestra consideración y la transcripción de la prueba oral desfilada ante el foro primario, y en atención a la deferencia que debemos otorgar al

dictamen bien fundamentado del foro primario, no vemos que este haya incurrido en un craso abuso de discreción o que haya mediado prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. Veamos.

Por medio de su escrito, Torres Fred pretende que determinemos que se violentaron los términos de juicio rápido. Sin embargo, una lectura del recurso ante nos refleja que las alegadas dilaciones en el comienzo del juicio se debieron a peticiones instadas por la defensa. Según expuesto, el mero incumplimiento con los términos de la Regla 64 (n) de las de Procedimiento Criminal, *supra*, no constituye, por sí solo, una violación al derecho a juicio rápido, ni conllevaba la desestimación automática de los cargos. Cuando ello ocurre, el TPI debe efectuar un examen razonable de todos los factores aplicables esbozados, tanto en la Regla 64 (n)(4) de las de Procedimiento Criminal, *supra,* como en la jurisprudencia interpretativa. En este caso, el TPI **no** adjudicó la controversia de forma rígida.

Surge del expediente con meridiana claridad que el juzgador tomó la decisión sopesando todos los factores esenciales al momento de justipreciar la solicitud de desestimación del apelante. Como hemos mencionado, la evaluación debe incluir la duración de la tardanza; las razones para la dilación; si el acusado ha invocado oportunamente ese derecho, y el perjuicio resultante de la tardanza. En este caso, el foro apelado consideró que las mociones presentadas por la defensa incidieron sobre el retraso en el comienzo del juicio, debido a que los petitorios, dos (2) mociones de desestimación y una solicitud de supresión de identificación, requerían la contestación del Ministerio Público. Además, colegimos que no surge del recurso, la transcripción o el expediente el perjuicio que esta tardanza le provocó. Por lo tanto, el foro apelado actuó correctamente al dictaminar que no procedía la desestimación del recurso por

violación a los términos de juicio rápido porque Torres Fred no acreditó el perjuicio adolecido debido a las dilaciones y estas, además, se debieron a la presentación de sus petitorios y su eventual renuncia al juicio por jurado presentada el **30 de agosto de 2023**.

Además, en su recurso, el apelante subraya y alude a que el tribunal de instancia erró en su apreciación de la prueba al adjudicar la moción de supresión de identificación y al hallarlo culpable por el delito tipificado en el Artículo 6.05 de la Ley de Armas, *supra*, sobre poseer, transportar o portar un arma de fuego sin la debida licencia. Puntualmente, Torres Fred indica que procedía suprimir la identificación por esta carecer de garantías de confiabilidad y porque estuvo basada en prueba de referencia y que erró el TPI al encontrarlo culpable porque no se probaron todos los elementos del delito de posesión de arma de fuego sin la debida autorización.

Sin embargo, la prueba presentada avaló que, tras lo ocurrido el 20 de noviembre de 2022, la señora Fonseca Ortiz declaró que logró identificar a Torres Fred como el autor de los hechos luego de una conversación que tuvo con su señor padre, quien le indicó el nombre y relación del apelante con su expareja. Al ella realizar una búsqueda en la red social de *Facebook*, reconoció a Torres Fred como la persona que la había apuntado con un arma; este hecho se lo comunicó a la agente Faris Lebrón, quien realizó seguidamente una búsqueda similar y, después de hallarlo, investigó en las bases de dato policiales para obtener más información sobre la persona para poder localizarla. Posteriormente, cuando se celebró la rueda de confrontación mediante fotografías, la señora Fonseca Ortiz identificó a la persona en la foto número dos (#2), Torres Fred, como el individuo que delinquió; esta declaró que no hubo indicios de sugestividad o intervención alguna por parte de la policía durante el proceso de identificación. Colegimos que el hecho de que la señora

Fonseca Ortiz haya consultado a la red social *Facebook* para corroborar el nombre e identidad de quien cometió el delito no es suficiente para derrotar la identificación de Torres Fred. Es importante resaltar que la señora Fonseca Ortiz **observó** al apelante *durante la comisión de los hechos* e, incluso, su hermano le tomó una fotografía justo antes del suceso que esta pudo ver después. El hecho de que ella quiso corroborar la identidad de Torres Fred no hace menos válida la identificación realizada.

En consecuencia, sostenemos la determinación del juzgador de los hechos en cuanto a la admisibilidad de la identificación del apelante. No existen elementos de juicio que den lugar a la supresión de esta. Ciertamente, el apelante no demostró que hubiese elementos sugestivos durante el procedimiento que apuntaran a su persona. La identificación de este fue libre, espontánea y confiable.

Asimismo, recalcamos que el juzgador de los hechos no incurrió en pasión, prejuicio, parcialidad o error manifiesto al apreciar y evaluar la prueba presentada, y al adjudicar su credibilidad de credibilidad. De la transcripción de la prueba, se desprende que Torres Fred apuntó con un arma de fuego hacia la señora Fonseca Ortiz mientras ella y sus hijas se encontraban dentro de su vehículo. Durante la investigación, el agente Meléndez Santos corroboró en sistema el hecho de que Torres Fred no tenía licencia para portar armas de fuego; un suceso del cual tiene conocimiento personal. Como hemos reseñado, el delito de portar, transportar o utilizar armas de fuego sin la debida autorización tiene dos elementos: (1) portar, transportar o usar un arma de fuego, y (2) sin tener licencia para ello.

En suma, examinada la totalidad de la prueba que tuvo ante sí el juez, hemos de concluir que los errores esbozados no se cometieron. El juzgador de hechos aquilató la prueba presentada y adjudicó su credibilidad. El Ministerio Público probó la culpabilidad

del apelante más allá de duda razonable y se estableció el vínculo del Torres Fred con la comisión del delito.

Por último, Torres Fred apuntó que el foro apelado incidió al declarar no ha lugar a la moción de desestimación incoada por su defensa bajo el fundamento de que no se le proveyó prueba posiblemente exculpatoria. Particularmente, recalcó que no se le facilitó un informe monodactilar que arrojó negativo a la presencia de huellas del apelante en el automóvil en el cual se encontraban la señora Fonseca Ortiz y sus hijas. Por su parte, el Ministerio Público argumentó que la defensa ya tenía en posesión ese informe, debido a que se le suplió durante una vista de causa probable para arresto por un delito por el cual no se le encontró causa; el Pueblo enfatizó, además, que no utilizaría esa prueba para probar los delitos por los cuales se halló causa para acusar.

En el caso de epígrafe, se halló causa para acusar a Torres Fred por la infracción de los Artículos 6.05 y 6.14 de la *Ley de Armas*, *supra*. El hecho de que no se encontraron las huellas dactilares del apelante en el carro donde se encontraban la señora Fonseca Ortiz y sus hijas es ***inmaterial e impertinente*** a los delitos imputados. En otras palabras, el informe monodactilar, independientemente de si se le facilitó a la defensa o no, ni cambia el resultado de la convicción positivamente ni guarda relación con el hecho de que Torres Fred poseyó, transportó y utilizó un arma de fuego sin tener una licencia expedida por el Estado y que apuntó con esa pistola a la señora Fonseca Ortiz mientras se encontraban en un lugar público. Así, el foro apelado actuó correctamente al no desestimar el caso por no habérsele entregado a la defensa el informe monodactilar a tiempo.

**IV.**

Por los fundamentos antes esbozados, ***confirmamos*** la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo, contra Ángel Gabriel Torres Fred.

Lo acordó el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones